

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0088-10

---

### RICKIE DAWSON YORK, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

---

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, KEASLER, HERVEY, and ALCALA, JJ., joined. WOMACK, J., filed a concurring opinion. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

We must resolve two issues in this case. First, did a police officer have reasonable suspicion to detain appellant, who was asleep in a car, with the lights on and the engine running, parked on a sidewalk in front of a gas station during the early morning hours? Second, does the doctrine of collateral estoppel require the suppression of evidence in a subsequent prosecution when that evidence was suppressed in an earlier prosecution arising from the same facts? The answer to the first question is relatively straightforward. But to answer the second question, we must deconstruct

earlier opinions from this Court and re-analyze the question from scratch.

## I. BACKGROUND

### A. Criminal Investigation

Leland Shawn Johnson was a patrol officer for the City of Bullard, in Smith County. On his way to Tyler[1] at around 3:00 a.m. on October 16, 2007, he passed an Exxon gas station that was outside the city limits of Bullard but still in Smith County.

Officer Johnson was personally aware that this particular Exxon station had been burglarized at least once during the previous two years, and he had been advised by deputies that other burglaries had occurred there. The Exxon station was closed for the night, but a car was parked partially on the sidewalk immediately in front of the Exxon store, with the headlights shining on the store window. The headlights were shining into the business. From Officer Johnson's vantage point on the road, the car appeared to be almost touching the front door glass. The light from the headlights was being reflected back into the vehicle, and the car did not appear to be occupied. Officer Johnson parked behind the vehicle, turned his headlights off, and approached on foot.

He saw that the car's engine was running, the driver's rear window was down, and appellant was in the car asleep with the seat laid back. Officer Johnson did not smell any alcohol, nor did he see any items in the car that might have been taken in a burglary. He watched appellant for a few minutes and looked around for weapons before waking appellant up. Appellant expressed surprise upon being awakened.

Officer Johnson asked appellant for identification, and appellant said that he had left it at

---

[1] Bullard "closed down" by 10:00 p.m., and officers working late-night shifts were allowed to go to Tyler to get something to eat.

home. Officer Johnson then asked appellant to step outside the vehicle. In the ensuing conversation, appellant expressed confusion regarding where he was, saying that he was in the Chapel Hill area, when he was not even close to there. Officer Johnson then asked if appellant had any weapons. Appellant said that he did not, and he gave Officer Johnson consent to search his person. The search revealed that appellant possessed marijuana and methamphetamine, and he was arrested. Appellant gave Officer Johnson a false name after the arrest.[2]

## B. First Prosecution: Failure to Identify

The criminal district attorney's office first prosecuted appellant in a county court at law for the misdemeanor offense of failure to identify.[3] The case was tried to a jury, with the sole evidence being Officer Johnson's testimony. In addition to facts outlined above, Officer Johnson testified during cross-examination about whether he had seen appellant committing certain offenses:

Q. Would you say that in those couple of minutes [of watching appellant sleeping], you were able to determine that there was not a burglary at that location going on?

A. Well, I couldn't say that there was one occurring at that time, yes.

Q. Okay. And you didn't see any kind of property or anything in the car, did you?

A. Not from standing outside, no.

Q. Nothing that would give you reason to believe that he had burglarized that store?

---

[2] The facts elicited in the failure to identify prosecution were different in the following respects from the testimony in this case: (1) Officer Johnson testified that the headlights were shining on the window, but he did not specifically testify that the headlights were shining "into the business." (But one of the prosecutors argued to the county-court-at-law judge: "The car was -- the lights were on inside the store illuminating the store.") (2) Officer Johnson testified that the "rear windows" were down, not just the driver's rear window. (3) Officer Johnson did not testify about appellant's "Chapel Hill" statement. These differences are immaterial to our resolution of the issues before us.

[3] *See* TEX. PENAL CODE § 38.02(b).

A. No.

* * *

Q. Officer, at that time when you asked for consent to search and continued your investigation, Mr. York hadn't committed any type of felony offense within your view at that time, had he?

A. No, he had not.

Q. He had not committed any type of offense that would be considered a breach of the peace; is that correct?

A. No, he had not.

Q. He hadn't committed any type of public order crime, such as a riot or something to that effect?

A. No, he had not.

Q. He had not committed, in your view, an offense under Chapter 49 of the Penal Code, which is DWI, intoxication manslaughter, that type of offense. He had not committed any, correct?

A. No, he had not.

Officer Johnson also testified that a video of the incident existed, but he did not have it.

Outside the presence of the jury, the parties and the county court at law judge discussed two defense motions: a motion for directed verdict of acquittal and a motion to suppress evidence. Both motions were based on the idea that the State failed to prove that appellant's arrest or detention was lawful. The defense first raised these motions after the State's direct examination, but the judge denied the motions at that time. After defense counsel's cross-examination, the parties and the judge resumed discussion of these issues, which included remarks by the judge regarding the officer being outside of his jurisdiction. Ultimately, the judge granted the motion to suppress. Before bringing in the jury, the judge stated: "Well, the court will enter a directed verdict of acquittal, based on the fact

there is no evidence to go before the jury."

> After the jurors were brought back into the courtroom, the judge explained to them:

> Basically, what I did was grant the defendant's motion to suppress. I'm not necessarily finding the officer did anything wrong. He was outside of his jurisdiction, stopped to investigate what was going on. I don't think there is anything wrong with that. But with him being outside his jurisdiction and him not testifying to any articulable facts as to how he thinks an offense might have been committed, I think the law requires me to grant the motion to suppress, which means y'all have no evidence in front of you.

> * * *

> [Addressing appellant:] This officer did exactly what he was supposed to do. You're getting away on a technicality.

Expecting the State to appeal this decision because of his other cases, the judge told defense counsel that he could draft the findings of fact and conclusions of law. No written findings of fact and conclusions of law are contained in the record before us.

### C. Second Prosecution: Possession of Methamphetamine

The criminal district attorney's office later prosecuted appellant in district court for possession of methamphetamine. The parties litigated the legality of Officer Johnson's conduct during a pretrial suppression hearing. At this hearing, the defense introduced the record of trial proceedings from the failure-to-identify prosecution. Officer Johnson also testified, and a video of the incident was played for the court. In addition to the facts outlined previously, Officer Johnson testified that, as he approached appellant's car, he believed that there was a "[p]ossible burglary in progress." Once he found appellant asleep in the car, Officer Johnson suspected possible offenses of burglary, DWI, public intoxication, or trespass. With respect to the testimony outlined in part IB of this opinion, Officer Johnson also explained that his testimony in the failure-to-identify

prosecution reflected that he did not know particular offenses had been committed but that he was conducting an investigation.

Before the district judge, defense counsel argued that Officer Johnson lacked reasonable suspicion or probable cause to detain appellant, that Officer Johnson's investigation was prohibited under Article 14.03(d)[4] because he was outside of his jurisdiction, and that suppression should be granted under the doctrines of *res judicata*[5] and collateral estoppel.

With respect to the Article 14.03(d) claim, defense counsel contended that Officer Johnson did not observe any of the offenses for which Article 14.03(d) allows an out-of-jurisdiction officer to perform an arrest.

With respect to the collateral-estoppel question, defense counsel first explained that the lawfulness of the arrest or detention is an element of the offense of failure to identify.[6] He further argued, based upon Fifth Circuit cases, that collateral estoppel could involve two different scenarios: (1) barring the prosecution itself or (2) barring the relitigation of evidentiary facts.[7] Defense counsel contended that appellant's case fell within the second scenario. He contended that *Murphy v. State*,[8]

---

[4] TEX. CODE CRIM. PROC. art. 14.03(d).

[5] Appellant's "*res judicata*" claim was not really distinct from his collateral-estoppel claim, and we need not make any further reference to it.

[6] *See* TEX. PENAL CODE § 38.02(b) ("A person commits an offense if he intentionally gives a false or fictitious name . . . to a peace officer who has (1) lawfully arrested the person [or] (2) lawfully detained the person.").

[7] Defense counsel relied upon *Wingate v. Wainwright*, 464 F.2d 209 (5th Cir. 1972); *Blackburn v. Cross*, 510 F.2d 1014 (1975); *United States v. Nelson*, 599 F.2d 714 (5th Cir. 1979); and *United States v. Lee*, 622 F.2d 787 (5th Cir. 1980).

[8] 239 S.W.3d 791 (Tex. Crim. App. 2007).

upon which the prosecutors heavily relied, involved only the first scenario.

Throughout the hearing, defense counsel referred to the fact that jeopardy had attached in the first prosecution when the suppression issue was decided. He also contended that the State had a full and fair opportunity to litigate the issue because (1) the State could have put into evidence, in the first prosecution, the additional evidence that was presented in the second prosecution, and (2) the State could have appealed the trial court's ruling in the first prosecution.

Finding that Officer Johnson had adequate justification to conduct an investigative detention, and relying upon *Murphy* to dispose of appellant's collateral-estoppel argument, the district judge denied the motion to suppress. Appellant pled guilty, and he pled true to two prior enhancement allegations. Punishment was tried to the jury, and the jury sentenced him to sixty years in prison.

### D. Appeal

Appellant raised his suppression issues on appeal.[9] With respect to the collateral-estoppel contention, he argued that the trial court in the failure-to-identify prosecution found two facts that should have been given preclusive effect in the methamphetamine prosecution: (1) that the officer was outside his jurisdiction, and (2) that none of the exceptions in Article 14.03 applied. Appellant claimed that *Murphy* could be distinguished on the basis that it "centered on the legal conclusion of a lack of probable cause" while appellant's case turns upon prior factual determinations made by the trial court in the failure-to-identify prosecution.

The court of appeals observed that Article 14.03(d) allows an outside-of-jurisdiction officer to detain a person for an offense committed in the officer's presence if the offense is a felony or a

---

[9] Other portions of our opinion reflect the content of the reasonable suspicion/Article 14.03 complaint made before the court of appeals.

violation of Chapter 42 of the Penal Code.[10]  The court concluded that Officer Johnson had reasonable suspicion to believe that appellant was committing a burglary.[11]  The court also concluded that appellant parked his vehicle on a sidewalk in violation of Penal Code §42.03.[12]

Relying upon our decision in *Murphy*, the court of appeals held that collateral estoppel applies only to a previously litigated fact that constitutes an essential element of the offense in the second prosecution.[13]  Consequently, the court concluded that principles of collateral estoppel did not preclude the State from proving the legality of appellant's detention and arrest because that issue did not constitute an element of the offense of possession of methamphetamine.[14]

## II. ANALYSIS

### A. Legality of Officer Johnson's Conduct

#### 1. *Appellant's Contentions*

In his first ground for review, appellant complains that Officer Johnson's discovery of the methamphetamine was the product of an illegal detention.  Appellant argues that a detention was created by Officer Johnson's act of blocking in appellant's car, his request that appellant exit the vehicle, and appellant's compliance with that request.  Appellant further argues that Officer Johnson was outside of his jurisdiction, and as a result, his authority to detain depended upon reasonable

---

[10]  *York v. State*, No. 12-08-00106-CR, slip op. at 6 (Tex. App.–Tyler December 16, 2009) (not designated for publication).

[11]  *Id.* at 5-6.

[12]  *Id.* at 6; *see* TEX. PENAL CODE §42.03(a)(1) ("A person commits an offense if, without legal privilege or authority, he intentionally, knowingly or recklessly . . . obstructs a . . . sidewalk").

[13]  *York*, No. 12-08-00106-CR, slip op. at 7 (citing *Murphy*, 239 S.W.3d at 795).

[14]  *Id.*

suspicion to believe that an offense had been committed in his presence.[15] Appellant contends that Officer Johnson did not have reasonable suspicion to believe that he had observed appellant committing burglary, DWI, public intoxication, obstruction of a sidewalk, or criminal trespass.

## 2. *Article 14.03*

We will assume without deciding that appellant is correct that an investigative detention began when he complied with the officer's request to exit his vehicle.[16] And we will assume, without deciding, that the term "arrest" in the relevant provisions of Article 14.03 includes investigative detentions.[17]

---

[15] Appellant also contends that Officer Johnson lacked reasonable suspicion under Fourth Amendment standards, but as will become clear later, we need not address this contention.

[16] In *Garcia-Cantu v. State*, we determined that the trial court's finding that a detention had occurred was supported by the convergence of a number of factors, including: the "boxing in" of the defendant's vehicle, the use of a spotlight, the early morning hour in which the conduct occurred, the use of an authoritative tone of voice, shining a flashlight across the defendant's eyes, and asking for identification. 253 S.W.3d 236, 247-48, 250 (Tex. Crim. App. 2008). No spotlight was used in the present case, and the district court was free to determine that the officer's voice was not authoritative.

Of course, the defendant in *Garcia-Cantu* was also awake, which was not true in the present case when Officer Johnson first approached the car. In *G.M. v. State*, the Supreme Court of Florida held that a person is not seized if he is unaware of the police conduct that would constitute an assertion of authority. 19 So. 3d 973, 983 (Fla. 2009). In that case, the defendant had not observed that a police car's flashing lights had been activated and became aware of police presence only after an officer identified himself and ordered the defendant to spit out the marijuana. *Id.* In arriving at its conclusion, the court cited "rare" and unpublished decisions from other courts that found no seizure when the defendant was unconscious or asleep, including one decision finding no seizure when the police blocked in a defendant's car. *Id.* at 982 n.6. This holding seems consistent with Supreme Court caselaw that the occurrence of a detention depends upon a suspect's reasonable perception of restraint and submission to a show of authority. *See Brendlin v. California*, 551 U.S. 249 (2007) ("[T]here is no seizure without actual submission" and the test is whether "a reasonable person would have believed that he was not free to leave" or whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.").

[17] By its terms, Article 14.03 applies to "arrests," but with respect to a different part of the statute, we have held that "arrest" includes "detention." *State v. Kurtz*, 152 S.W.3d 72, 79-80 (Tex.

As a city police officer, Officer Johnson was a peace officer as defined by Article 2.12(3).[18]

The controlling provision with respect to that type of peace officer is Article 14.03(g)(2), which

provides:

> A peace officer listed in Subdivision (3), Article 2.12, who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.[19]

Officer Johnson had state-wide authority to arrest for any non-traffic offense committed within his

presence or view. Moreover, within Smith County—where the City of Bullard is located—Officer

Johnson's authority to arrest for offenses committed within his presence or view extended to traffic

offenses as well.[20] Consequently, because the Exxon station was located in Smith County, Officer

Johnson had the authority to arrest (and thus conduct an investigative detention) for *any* offense

committed within his presence or view.[21] The question, then, is whether Officer Johnson had the

---

Crim. App. 2004).

[18]  TEX. CODE CRIM. PROC. art. 2.12(3) (peace officers include "police officers of an incorporated city, town, or village").

[19]  *Id.*, art.14.03(g)(2).

[20]  At the time we decided *Kurtz*, a city police officer did not have the authority to arrest for a traffic offense committed in his presence or view but outside of his jurisdiction. *See Kurtz*, 152 S.W.3d at 79-80 (quoting from then existing version of Article 14.03(g)). Authority to arrest within the city police officer's county was added by amendment in 2005. Acts 2005, 79th Leg., Ch. 1015, §1, eff. Sept. 1, 2005.

[21]  Appellant did not have a driver's license in his possession and his vehicle was parked on a sidewalk, but it is not clear that either of these facts constituted a crime committed in Officer Johnson's presence. An operator of a motor vehicle must have a driver's license in his possession while operating a motor vehicle on a *highway*. *See* TEX. TRANSP. CODE §§521.021 & 521.025(a)(1).

requisite level of suspicion that such an offense was being or had been committed.

Investigative detentions are generally governed by the reasonable suspicion standard.[22] Under the Fourth Amendment, "reasonable suspicion" exists when an officer is aware of "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[23] This standard is objective; the subjective intent of the officer conducting the detention is irrelevant.[24] In addition, reasonable suspicion does not depend on the "most likely explanation" for a suspect's conduct, and reasonable suspicion can exist even if the conduct is "as consistent with innocent activity as with criminal activity."[25] The standard is logically the same in an article 14.03(g) context, except that the officer's reasonable suspicion must be limited to whether the suspect is committing, or had committed, an offense in the officer's presence or view.[26]

---

An operator of a motor vehicle may not stop, stand, or park the vehicle on a "sidewalk," *Id.*, §545.302(a)(2), but a "sidewalk" is defined in part for this purpose as "the portion of a street that is . . . between a curb or lateral line of a roadway and the adjacent property line." *Id.*, §541.302(16). Because we do not address the Court of Appeals's reliance upon the obstructing-a-sidewalk provision found in Penal Code §42.03, we need not determine whether "sidewalk" in that statute has a meaning different from the definition found in the Transportation Code.

[22] *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Crain v. State,* 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).

[23] *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see also Crain,* 315 S.W.3d at 52.

[24] *Garcia*, 43 S.W.3d at 530.

[25] *Curtis v. State*, 238 S.W.3d 376, 378-79 (Tex. Crim. App. 2007); *see also Woods v. State*, 956 S.W.2d 33, 38-39 (Tex. Crim. App. 1997).

[26] *See Stull v. State*, 772 S.W.2d 449, 452 (Tex. Crim. App. 1989) (this Court has upheld arrests under Article 14.01, which required commission of offense in an officer's presence, "when the police officers personally observed behavior that although not overtly criminal, was, when

### 3. *Public Intoxication*

A person commits the offense of public intoxication if he "appears in a public place while intoxicated to the degree that the person may endanger the person or another."[27] "Public place" means "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."[28] A gas station is a shop, and it and the area around it are places to which the public has access.[29] We hold that the parking and sidewalk area outside the Exxon station was a public place.

The next question is whether Officer Johnson had reasonable suspicion to believe that appellant was intoxicated to the degree that he might endanger himself or another. Before appellant was awakened, Officer Johnson knew that: (1) it was around 3:00 a.m., (2) appellant was asleep in his car, (3) the car's engine was running, (4) the car was parked partially on the sidewalk very near

---

coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring"); *Lunde v. State*, 736 S.W.2d 665, 666-67 (Tex. Crim. App. 1987) (observing this Court's past rejection of sufficiency-of-the-evidence standard for determining when offense is committed in presence under Article 14.01—instead employing probable cause standard traditionally associated with arrests); *Delgado v. State*, 718 S.W.2d 718, 720-21 (Tex. Crim. App. 1986) (commission of crime within presence requirement of Article 14.01 satisfied when officer had probable cause to believe crime was being committed in his presence but it was later determined that officer was incorrect); *see also McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003) (following *Stull* and *Lunde*).

[27] TEX. PENAL CODE §49.02(a).

[28] *Id.*, 1.07(40).

[29] One court of appeals has held specifically that the parking lot of a convenience store is a public place. *Gonzalez v. State*, 664 S.W.2d 797, (Tex. App.–Corpus Christi 1984), *rev'd* on other grounds in unpublished disposition, *aff'ing* as modified on remand, 683 S.W.2d 791 (Tex. App. Corpus Christi 1984).

the door to the store, and (5) the headlights were on.

The circumstances in the present case were sufficient to give rise to a reasonable suspicion that would permit an investigative detention. From the circumstances present here, Officer Johnson could reasonably suspect that appellant was intoxicated. And with the engine running, an intoxicated driver might have awakened, and in his stupor, driven into the store. Or he might have returned to the road, where he would pose a threat to others who were traveling.[30] It would be reasonable to suspect that appellant posed a danger to himself or others.[31]

Although Officer Johnson did not smell alcohol as he approached the car, that fact did not cause reasonable suspicion to dissipate, in part because appellant could still have been intoxicated

---

[30] Being asleep with the engine running has been held to be an indication that a person had operated his car earlier. *See Denton v. State*, 911 S.W.2d 388, 389-90 (Tex. Crim. App. 1995) (a person "operates" a motor vehicle for purposes of DWI when he takes "action to affect the functioning of his vehicle in a manner that would enable the vehicle's use," such as starting the ignition and revving the accelerator).

[31] Appellant cites several cases as buttressing his contention that Officer Johnson did not have reasonable suspicion to believe that appellant was committing the offense of DWI or public intoxication. Only one of those cases—*State v. Griffey*, 241 S.W.3d 700 (Tex. App.–Austin 2007, pet. ref'd)—involves a sleeping suspect. In *Griffey*, a manager at a Whataburger restaurant called the police at around 3:00 a.m. to report a person "passed out behind the wheel in the drivethrough." *Id.* at 702. Police found the suspect awake in her car, which was next to the drivethrough window. *Id.* The trial court suppressed evidence from the stop, *id.* at 703, and the court of appeals affirmed. *Id.* at 707. The court of appeals found that the officer lacked reasonable suspicion because the citizen-informant tip was not corroborated, and was actually contradicted by the fact that the suspect was awake when the officer arrived. *Id.*

As a lower appellate court decision, *Griffey* is not binding on us. In any event, *Griffey* is distinguishable because it dealt with the reliability of the information that the suspect was asleep. In the present case, Officer Johnson personally observed the suspect sleeping.

The Supreme Court of Colorado has stated, "Reasonable suspicion to make a stop for the crime of driving under the influence may arise when a police officer sees a person asleep behind the wheel of a car with its engine running." *People v. Brown*, 217 P.3d 1252, 1256 (Colo. 2009). The Supreme Court of Louisiana has held those facts, combined with the early morning hour and the presence of the vehicle in the French Quarter of New Orleans, to be sufficient reasonable suspicion to make an investigatory stop. *State v. Keller*, 403 So. 2d 693, 696 (La. 1981).

by drugs.[32]  Nothing else occurred that would have negated reasonable suspicion before Officer Johnson found the drugs on appellant's person.  To the contrary, the fact that appellant did not have his driver's license with him and was confused about his location served to reinforce a reasonable suspicion of intoxication.

### 4. *Burglary*

Even before he parked behind appellant's car, there was reasonable suspicion to believe that a burglary was occurring.  Officer Johnson knew that the Exxon station was closed, that the station had been burglarized before, that it was about 3:00 a.m., that the headlights of appellant's car were shining into the store, and that appellant was parked too close to the store door (on the sidewalk).  These facts were sufficient for Officer Johnson to reasonably suspect that a burglary might be occurring and to justify an investigation.  When the officer approached the car on foot, he learned that the engine was running, which would be consistent with it being a getaway car.

Appellant contends that, even if Officer Johnson initially had reasonable suspicion to investigate a possible burglary, that suspicion was later dispelled, and once the suspicion was dispelled, he should have ended the detention.  But even if appellant's sleeping and subsequent events had dispelled any reasonable suspicion that appellant was participating in a burglary, by that time there was reasonable suspicion that he was guilty of public intoxication, as discussed above.  We overrule appellant's first ground for review.

_____

[32] *See* TEX. PENAL CODE §49.01(2)(A).  (The definition of "intoxicated" includes "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.")

**B. Collateral Estoppel**[33]

**1. *Murphy***

The courts below relied upon our opinion in *Murphy* to resolve appellant's collateral-estoppel claim. For reasons that will become apparent, we shall examine the line of cases that led up to our opinion in *Murphy* and reexamine our holding in that case.

Murphy was stopped for speeding, and the stop resulted in the discovery of drugs and drug paraphernalia.[34] Murphy was first prosecuted in a justice-of-the-peace court for possession of drug paraphernalia.[35] He was acquitted during a bench trial at which the State failed to produce evidence of speeding, and as a result, failed to establish the validity of the stop.[36] He was later prosecuted in district court for possession of a controlled substance.[37] Alleging collateral estoppel, Murphy filed a motion to suppress and a motion to dismiss the indictment.[38] These motions were denied, and he was ultimately convicted.[39] We characterized Murphy's claim before the court of appeals as being whether the legality of the detention was litigated in the justice court.[40]

---

[33] Appellant specifically relies upon the doctrine of collateral estoppel as articulated in *Ashe v. Swenson*, 397 U.S. 436 (1970), which construed the doctrine as it was incorporated within the Double Jeopardy Clause of the Fifth Amendment. Any argument based upon a notion of collateral estoppel outside the double-jeopardy context is outside the scope of this opinion.

[34] *Murphy*, 239 S.W.3d at 792.

[35] *Id.* at 793.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 794.

In *Murphy*, we held that the collateral-estoppel inquiry involved a two-part analysis: (1) determining exactly what facts were necessarily decided in the first proceeding, and (2) determining whether those necessarily decided facts constitute essential elements of the offense in the second trial.[41] We said that this analysis applied "[t]o determine whether collateral estoppel bars a subsequent prosecution or permits the prosecution but bars relitigation of certain specific facts."[42]

To support this proposition, we cited to our earlier decision in *Ex parte Taylor* and to the Fifth Circuit case of *Neal v. Cain*.[43] We also provided a "*see also*" citation to *United States v. Larkin*.[44] Relying upon *Neaves v. State*,[45] the concurring opinion in *Murphy* explained that probable cause to stop the defendant was not the same issue as guilt of possessing the controlled substance.[46]

At various stages of the proceedings, appellant has articulated three bases for distinguishing this case from *Murphy*: (1) the present case involves specific fact findings, while *Murphy* involved only legal conclusions, (2) the validity of the police officer's conduct was an element of the offense in appellant's earlier prosecution, but that was not true of the defendant in *Murphy*, and (3) appellant claims merely that certain evidentiary facts cannot be relitigated, while *Murphy* dealt with whether the earlier acquittal necessarily barred the entire prosecution in the subsequent case.

---

[41] *Id.* at 795.

[42] *Id.*

[43] *Id.* at 795 (citing *Ex parte Taylor*, 101 S.W.3d 434 (Tex. Crim. App. 2002) and *Neal v. Cain*, 141 F.3d 207 (5th Cir. 1998)).

[44] Id. at 796 (citing *United States v. Larkin*, 605 F.2d 1360, 1361 (5th Cir. 1979)).

[45] 767 S.W.2d 784 (Tex. Crim. App. 1989).

[46] *Murphy*, 239 S.W.3d at 797 (Meyers, J., concurring).

We need not address appellant's first articulated basis for distinguishing *Murphy*—that the present case involves factual rather than legal issues. We will assume, without deciding, that appellant has satisfied any requirement that the prior prosecution resolved a question of fact, and we otherwise decline to address the matter.[47]

The second basis presents a real difference between the present case and *Murphy*. The validity of Murphy's detention was not an element of the offense in his first prosecution. But the validity of appellant's detention was an element of the offense in appellant's first prosecution.[48]

Under the analysis articulated in *Murphy*, all that matters is an issue's status in the *subsequent* prosecution. The fact that an issue may have been an "essential element" in the earlier prosecution does not appear to be relevant. Nevertheless, the *Murphy* court was not presented with a situation in which an issue was an essential element in the earlier prosecution; whether the *Murphy*

---

[47] In her concurring opinion, Judge Cochran concludes that the issues resolved in appellant's favor in the first prosecution were legal issues and that legal issues are not subject to collateral estoppel. But the court of appeals did not resolve appellant's claim on this basis; it relied solely on *Murphy*.

Also, whether Judge Cochran's basis for resolving this case is correct can be questioned on two levels. First, it is arguable that the trial court in the first prosecution did make a relevant factual finding when it characterized the officer as "not testifying to any articulable facts as to how he thinks the offense might have been committed." Second, there may be a question about whether an issue of law can be the subject of collateral estoppel. *See Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009) (Double Jeopardy case in which the Supreme Court defined collateral estoppel in this way: "Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'") (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980) (ellipsis in *Bies*); RESTATEMENT (SECOND) OF JUDGMENTS §§ 27(referring to issue preclusion as applying to "an issue of fact or law"), 28(2) (listing exceptions to the preclusive effect of a prior determination of an issue of law). *See also* Womack, J., concurring, *post*, at 2 (stating that issue preclusion can prohibit a party from relitigating an issue "such as a fact, a question of law, or an application of law to fact").

We express no opinion on the question Judge Cochran's concurrence raises.

[48] *See* TEX. PENAL CODE §38.02(b)(1), (2).

analysis governs such a case depends upon the rationale underlying *Murphy*'s holding.

That observation leads us to the third proposed basis for distinguishing *Murphy*: that *Murphy* dealt only with a claim that the entire second prosecution was barred. Appellant does not claim that collateral estoppel bars the subsequent prosecution in his case; his claim is only that collateral estoppel resolves certain evidentiary facts in his favor and thereby requires the granting of his motion to suppress.[49]

It is understandable that appellant would think that *Murphy* dealt with a bar to prosecution rather than a bar to the relitigation of certain facts. Murphy had filed both a motion to dismiss and a motion to suppress, and our opinion did not specifically focus on which of those motions we were concerned with.[50] A review of the court of appeals's opinion in *Murphy* makes it clear, however, that the defendant was basing his appeal solely on the motion to suppress.[51] *Murphy* concerned the relitigation of certain facts.

But appellant's misperception is also understandable because the Fifth Circuit case relied upon in *Murphy* deals with a bar to prosecution rather than a bar to relitigation of certain issues. In *Neal*, the Fifth Circuit said, "In determining whether collateral estoppel *bars a subsequent prosecution*, as Neal contends it does here, we engage in a two-step analysis," with the second step being to determine whether the issues in question constitute essential elements of the offense in the

---

[49] The practical effect of granting the motion to suppress may be to derail appellant's prosecution, but that is not the same as barring the prosecution from the outset.

[50] *See Murphy*, 239 S.W.3d at 793-94.

[51] *Murphy v. State*, 200 S.W.3d 753, 757 (Tex. App.–Texarkana 2006).

second trial.[52]  So *Neal* stood only for the proposition that an issue must involve an essential element in the second prosecution in order for that issue to be used as a basis for barring prosecution altogether.[53]  *Neal* did not address what requirements apply when a defendant claims only that the State may not relitigate certain underlying facts.  We must look elsewhere to decide whether the essential-element-in-the-subsequent-prosecution requirement applies when the defendant seeks only to bar the proof of certain facts.

Appellant's attempted distinction also conflicts with *Murphy's* own pronouncement that its analysis applies to determine whether collateral estoppel "bars a subsequent prosecution *or permits the prosecution but bars relitigation of certain specific facts*."[54]

As explained above, *Murphy* relied on *Taylor* for this proposition.  *Taylor* did say that the essential-element-in-the-subsequent-prosecution requirement applies to a claim that collateral estoppel "bars the relitigation of certain facts."[55]  But this language was itself *dicta*, because *Taylor* involved a claim that the prosecution was entirely barred.[56]  The *Taylor* court relied upon *Neal* and

---

[52]  141 F.3d at 210 (emphasis added).  For the two-step analysis, *Neal* cited *United States v. Brackett*, 113 F.3d 1396 (5th Cir. 1997), but, as will be discussed later, *Brackett* avoided the issue of whether the analysis applied when the defendant seeks only to bar the proof of certain facts.  *See Brackett*, 113 F.3d at 1401 n.9.

[53]  *See Simon v. Commonwealth*, 220 Va. 412, 416, 258 S.E.2d 567, 570 (1979) ("Courts are in general agreement that in order to *bar a subsequent prosecution* for a different offense arising out of the same transaction, a necessary element of the offense in the second trial must have been clearly adjudicated in the earlier proceedings.") (emphasis in original).

[54]  *See Murphy*, 239 S.W.3d at 795 (emphasis added).

[55]  *Taylor*, 101 S.W.3d at 440.

[56]  *Id.* at 439, 442-43 (Intoxication was an element of the offenses in both the first and second prosecutions.  Acquittal in the first prosecution created a collateral estoppel bar to the second.).

*Dedrick v. State*[57] as authority for the proposition.[58]  And *Dedrick* quoted from *United States v. Mock.*[59]  None of these cases support the *dicta* in *Taylor*.[60]

*Neal* has already been discussed.  *Dedrick*'s quotation from *Mock* is actually contrary to *Taylor*'s *dicta*.  We quoted *Mock* as saying that facts established in the first prosecution may not be relitigated in a second prosecution "either as ultimate *or as evidentiary* facts."[61]  In support of this statement, *Mock* cited the Fifth Circuit decisions in *Wingate* and *Blackburn*,[62] two cases that were relied upon by defense counsel at trial in the present case.[63]

In *Wingate*, the State introduced extraneous offenses of which the defendant had previously been acquitted.[64]  The court construed the collateral-estoppel protection articulated in *Ashe*, in which

---

[57]  623 S.W.2d 332 (Tex. Crim. App. 1981).

[58]  *Taylor*, 101 S.W.3d at 440 n.17.

[59]  623 S.W.2d at 336 (quoting *United States v. Mock*, 604 F.2d 341 (5th Cir. 1979)).

[60]  *Taylor*'s *dicta* would be consistent with these cases if the phrase "permits prosecution but bars the relitigation of certain facts" were construed only to describe situations in which an offense contains alternate elements, *see e.g.*, *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Cr. App. 1991) (capital murder by murder in the course of robbery or aggravated sexual assault), and the previously litigated fact involves one or more, but not all, of the alternate elements.  As narrowly construed, *Taylor* would simply be saying that the essential-element-in-the-subsequent-prosecution requirement applies when the defendant is claiming to bar proof of an element of the offense, whether that element is a sole element (ending prosecution) or an alternate element (narrowing the State's theories of liability).  But *Murphy* did not have such a narrow understanding of *Taylor*'s *dicta*, and as will be seen below, the Fifth Circuit decisions that addressed the issue of barring the relitigation of certain facts took a broad view about what kinds of facts were being discussed.

[61]  *Dedrick*, 623 S.W.2d at 336 (emphasis added) (quoting *Mock*, 604 F.2d at 343).

[62]  *See Dedrick*, 623 S.W.2d at 336 (quoting *Mock*, 604 F.2d at 343).

[63]  *See* this opinion, footnote 7.

[64]  *Wingate*, 464 F.2d at 210.

the Supreme Court described collateral estoppel as the rule that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[65]  The *Wingate* court stated that it did not perceive any meaningful difference, for double-jeopardy purposes, between prohibiting relitigation of an issue that "is one of 'ultimate' fact or merely an 'evidentiary' fact in the second prosecution."[66]  The Fifth Circuit held that, although the prosecution itself was not barred, because no part of the charged offense had been previously litigated, the State was barred from introducing evidence of the extraneous offenses for which the defendant had been acquitted.[67]  In *Blackburn*, the Fifth Circuit explained that, in *Wingate*, "this Circuit significantly expanded the *Ashe* holding."[68]  After *Wingate*, the court said, "there is no difference between relitigating an ultimate fact or an evidentiary fact; relitigation of either is prohibited."[69]

Finally, with respect to *Murphy*'s reliance upon *Larkin* for the proposition that "[w]hile there is no bright-line or black-letter law that can resolve the issue of when collateral estoppel applies, collateral estoppel is inapplicable in this case,"[70] an examination of *Larkin* reveals that it supports only the first half of this statement.  The *Larkin* court referred to "arcane principles of double

---

[65]  *See Id.* at 212 (quoting *Ashe*, 397 U.S. at 443).

[66]  464 F.2d at 213.

[67]  *Id.* at 214.

[68]  510 F.2d at 1017.

[69]  *Id.*

[70]  *Murphy*, 239 S.W.3d at 795.

jeopardy and collateral estoppel" that are "not susceptible of bright-letter law or black-letter law,"[71] but the case did not involve the situation confronted in *Murphy* or that we confront today.[72]

*Neaves* provides no real support for the holding in *Murphy* either. In *Neaves*, the defendant obtained a negative finding in an administrative license-suspension hearing "upon the question whether probable cause existed that [the defendant] had been driving while intoxicated."[73] In his subsequent DWI prosecution, the defendant contended that the finding in the license-suspension proceeding "estopped the State from attempting to establish in the instant trial that [the defendant] had been driving while intoxicated."[74] We pointed out that the parties assumed that the ultimate facts in the two proceedings were the same: that probable cause to believe DWI had been committed (the ultimate fact in the license-suspension hearing) was the same ultimate fact as the actual commission of DWI (the ultimate fact in the criminal trial).[75] We held that this assumption was incorrect.[76] Because the defendant argued that the State was barred completely from proving the commission of DWI, this Court never had occasion to address whether the prior finding in the administrative license-suspension hearing could have been used to bar relitigation of issues raised in a motion to suppress.[77]

---

[71] 605 F.2d at 1361.

[72] *Id.*, *passim*.

[73] 767 S.W.2d at 785.

[74] *Id.*

[75] *Id.* at 786.

[76] *Id.* at 786-87.

[77] A decade after *Neaves*, we decided that a finding in an administrative license-suspension hearing does not even "implicate the rule of collateral estoppel as embodied in the Fifth Amendment

Furthermore, since our holding in *Murphy*, the Supreme Court has cited §27 of the Restatement (Second) of Judgments in two recent double-jeopardy/collateral-estoppel cases.[78] As we will explain in more detail later, comment j of that portion of the Restatement challenges the notion that collateral estoppel involves only the ultimate issues in a case.[79] For these various reasons, we will reexamine the question of when collateral estoppel bars relitigation of certain facts in a subsequent prosecution.[80]

### 3. *Ultimate Issue in the First Prosecution?*

As we have already noted, the validity of a detention or arrest was an element of the failure-to-identify offense with which appellant was previously charged.[81] As an element, it must be proven beyond a reasonable doubt.[82] In a motion to suppress setting, however, the propriety of an arrest or detention need not be proven beyond a reasonable doubt.[83] We do not often say what standard

guarantee against double jeopardy" because neither the successive-prosecution nor the multiple-punishment aspects of double jeopardy are at issue. *Reynolds v. State*, 4 S.W.3d 13, 18-20 (Tex. Crim. App. 1999).

[78] *Bies*, 129 S. Ct. at 2152; *Yeager v. United States*, 129 S. Ct. 2360, 2367 n.4 (2009).

[79] *See* RESTATEMENT (SECOND) OF JUDGMENTS §27 cmt. j (1982).

[80] Judge Womack's concurrence contends that *Murphy* and *Taylor* read *Neal v. Cain* too broadly. Womack, J., concurring, *post*, at 6-9. We agree, which is one reason we have chosen to re-examine the matter.

[81] TEX. PENAL CODE § 38.02(b).

[82] TEX. PENAL CODE § 2.01 ("All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.").

[83] *See Lalande v. State*, 676 S.W.2d 115, 117-18, 117 n.4 (Tex. Crim. App. 1984) (State is not required to prove propriety of a search beyond a reasonable doubt in a motion to suppress hearing.); *see also Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (recognizing that "the burden is on the State to show that the officer had reasonable suspicion" but not specifying the

applies in a motion-to-suppress setting, and we are unaware of any cases explicitly stating the State's standard of proof in establishing reasonable suspicion,[84] but we conclude that the appropriate standard is the one that applies to most[85] constitutional suppression issues: preponderance of the evidence.[86]

In *Dowling v. United States*, the Supreme Court explained that collateral estoppel does not bar relitigation of an issue resolved by a prior acquittal when, in the subsequent proceeding, the issue is governed by a lower standard of proof.[87] This holding defeats any attempt in the present case to use the detention issue's elemental status in the first prosecution as a basis for collateral estoppel. The State's failure to prove the validity of appellant's arrest or detention beyond a reasonable doubt (as an element of the failure-to-identify offense) does not result in a collateral-estoppel bar to determining the validity of that arrest or detention by a preponderance of the evidence in a

---

nature of that burden).

[84] *See e.g.*, *Castro*, 227 S.W.3d at 741.

[85] In at least one instance—the voluntariness of consent—the burden of proof is "clear and convincing evidence." *State v. Ibarra*, 953 S.W.2d 242 (Tex. Crim. App. 1997); *Lalande*, 676 S.W.2d at 117 n.4.

[86] *See Lego v. Twomey*, 404 U.S. 477, 488-89 (1972) (In a case involving the voluntariness of a confession, the Court stated that preponderance of the evidence is the standard employed by federal courts "in Fourth and Fifth Amendment suppression hearings."); *Griffin v. State*, 765 S.W.2d 422, 429-30 (Tex. Crim. App. 1989) (citing *Lego* in adopting preponderance of the evidence standard in determining the voluntariness of a confession). The use of a preponderance of the evidence standard at trial to determine the existence of "reasonable suspicion" should not be confused with the "reasonable suspicion" standard that itself governs the police officer's conduct in the field. Reasonable suspicion that a crime is, has been, or soon will be committed is a standard far short of preponderance of the evidence. *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) ("reasonable suspicion" is less than "probable cause," which in turn is far short of preponderance of the evidence).

[87] 493 U.S. 342, 348-49 (1990).

subsequent suppression hearing.[88] To prevail on his collateral-estoppel claim, then, appellant must rely upon the detention issue's status in the earlier prosecution as a suppression issue, governed by the preponderance of the evidence standard.

Complicating such reliance is the fact that the court in the failure-to-identify prosecution erred in addressing the detention issue as a suppression issue. In *Woods v. State*, we held that, when the validity of an arrest or detention is an element of the charged offense, litigating the validity of the seizure as a suppression issue is inappropriate.[89] Instead, the issue should simply be litigated as part of the State's case at trial.[90]

And *Woods* is not satisfied by litigating the validity of a seizure during the trial, if it is still litigated *as a suppression issue*. The trial judge's role with respect to elements of the offense and suppression issues differs significantly when the trial judge is not the finder of fact on the question of guilt. With respect to suppression issues, the trial judge is always the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony."[91] And with respect

---

[88] Had the issue of guilt in the controlled-substance trial been contested and submitted to the jury, and had the jury been given an instruction on the suppression issue under article 38.23, the State's burden before the jury would have been "beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. art. 38.23(a) ("the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this article . . . ."). Even with a contested jury trial on guilt, however, appellant would still have been required to show "a genuine dispute about a material fact" before he would be entitled to an instruction. *See id.* ("In any case where the legal evidence raises an issue hereunder . . . ."); *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008).

[89] 153 S.W.3d 413, 415 (Tex. Crim. App. 2005) (construing TEX. PENAL CODE § 38.04).

[90] *Id.*

[91] *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).

to such issues, he can draw rational inferences in favor of either party.[92] By contrast, when the trial judge is not the finder of fact on the question of guilt, he can direct a verdict in the defendant's favor only if "after viewing the evidence in the light most favorable to the prosecution," he cannot conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[93]

Appellant's trial in the failure-to-identify case was to a jury. Even if we assume that the trial judge in that case believed all of Officer Johnson's testimony (because he commented that Officer Johnson had done nothing wrong), the judge could still have drawn inferences against the State in resolving the motion to suppress. In doing so, he would have infringed on the jury's role in resolving the question of guilt.[94]

It is axiomatic that even an erroneous acquittal counts as an acquittal for double-jeopardy

---

[92] *Roy v. State*, 90 S.W.3d 720, 723 (Tex. Crim. App. 2002) ("An appellate court reviewing a trial court's ruling on a motion to suppress must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling.").

[93] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (sufficiency of the evidence standard); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (motion for directed verdict is construed as a challenge to the sufficiency of the evidence).

[94] If, in addition to assuming that the judge believed all of Officer Johnson's testimony, we further assumed that the judge drew all inferences in the prosecution's favor, then appellant's collateral-estoppel claim would fail, under any understanding of collateral estoppel, because the issue on which appellant seeks preclusion would not be essential to the judgment: To acquit the defendant in the failure-to-identify prosecution, it is not necessary for the trial judge to conclude that the State failed to prove the legality of the seizure *by a preponderance of the evidence*; it is only necessary to conclude that the State failed to do so *beyond a reasonable doubt*. *See* RESTATEMENT OF JUDGMENTS § 68 (preclusive effect accorded only to a prior determination that is "essential to the judgment"); RESTATEMENT (SECOND) OF JUDGMENTS §27 (same). However, if the trial judge had in fact viewed the entire record (including inferences) in the State's favor, and still believed that the State failed to prove the validity of the seizure, he could have granted appellant's motion for directed verdict without granting the motion to suppress (or independent of the motion to suppress).

purposes,[95] and one Supreme Court case suggests this is true even in the context of collateral estoppel.[96] Nevertheless, a distinction could possibly be made between giving preclusive effect to ultimate issues resolved by an acquittal that was wrongly procured and giving preclusive effect to an evidentiary issue that should never have been litigated in the first place. Assuming, without deciding, that such a distinction does not, by itself, defeat appellant's claim in the present case,[97] we consider the continuing validity of the proposition that collateral estoppel applies only when the issue in question constitutes an essential element in the subsequent prosecution.

## 4. Ultimate Issue in the Second Prosecution?

### *a. Ashe*

The Supreme Court's formulation of collateral estoppel in *Ashe*, by including a reference to "an issue of ultimate fact," in itself suggests that the issue upon which preclusion is sought should be an ultimate issue in at least one (and perhaps both) of the prosecutions. In *Ashe*, the issue

---

[95] *Moreno v. State*, 294 S.W.3d 594, 600 (Tex. Crim. App. 2009) (relying upon *Fong Foo v. United States*, 369 U.S. 141 (1962)).

[96] *See Sanabria v. United States*, 437 U.S. 54, 72-73, 77-78 (1978); *id.* at 72-73 (Acquittal for insufficient proof of the element that the defendant was connected to a particular gambling business would bar prosecution for any crime which shared that element.); *id.* at 77-78 (Judgment of acquittal in which Government's evidence was erroneously excluded "is final and unreviewable" and "absolutely bars a second trial.").

[97] We note that the prosecutor in the failure-to-identify prosecution did not object to the trial court considering appellant's motion to suppress and did not draw the trial court's attention to *Woods*. We need not decide whether the failure to object at that stage has procedural default consequences for the State in a subsequent prosecution. *See State v. Mercado*, 972 S.W.2d 75, 77-78 (Tex. Crim. App. 1998) (notions of procedural default apply to the State); *Ex parte Granger*, 850 S.W.2d 513 (Tex. Crim. App. 1993) (distinguishing prior case of *Stephens v. State*, 806 S.W.2d 812 (Tex. Crim. App. 1990) on the basis that the State in *Stephens* was barred from prosecuting a lesser-included offense in a subsequent trial after acquittal for the greater offense on appeal on legal insufficiency grounds when a lesser-included-offense instruction had not been submitted in the earlier trial, and the State had failed to request one).

(identity) was "ultimate" in both prosecutions. The defendant was prosecuted for robbing one of six individuals at a poker game and was acquitted.[98] The State then prosecuted the defendant for robbing a second individual at the game.[99] But the only rationally conceivable issue in dispute in the first prosecution was whether the defendant was one of the robbers.[100] Because the jury, by its verdict, found that ultimate issue in the defendant's favor, collateral estoppel barred the subsequent prosecution for robbing a second individual at that same game.[101]

The *Ashe* court also explained that collateral estoppel, though originally developed in civil litigation, had been a rule in criminal cases for over fifty years.[102] Notably, the Supreme Court suggested that collateral estoppel might be at least as protective in criminal cases as in civil cases when it quoted Justice Holmes's statement that, "It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence are less than those that protect from a liability in debt."[103] We must keep in mind, however, that this statement was quoted in connection with the *Ashe* formulation of the collateral-estoppel rule.

### b. The Ashe Approach

The formulation articulated in *Ashe* had been applied previously in *Yates v. United States*[104]

---

[98] *Ashe*, 397 U.S. at 437-39.

[99] *Id.* at 439-40.

[100] *Id.* at 445.

[101] *Id.*

[102] *Id.* at 443.

[103] *Id.* (quoting *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916)).

[104] 354 U.S. 298 (1957).

to preclude the application of collateral estoppel to issues that were not ultimate in nature. In *Yates*, the defendants were convicted of conspiring to advocate the overthrow of the United States government by force and violence.[105] One of the defendants had prevailed at an earlier denaturalization proceeding, which may have involved the litigation of some facts that were also relevant to the criminal proceeding.[106] Among other things, this defendant claimed that the determinations made in the denaturalization case were relevant to the criminal proceeding, "even if they do not conclude it, and hence that [the defendant] should be entitled to an instruction giving those determinations such partial conclusive effect as they might warrant."[107] The Supreme Court held that "the doctrine of collateral estoppel does not establish any such concept of 'conclusive evidence' as that contended for" by the defendant.[108] "The normal rule," the Supreme Court explained, "is that a prior judgment need be given no conclusive effect at all unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or 'mediate' facts are concerned, the doctrine of collateral estoppel is inoperative."[109] In support of this "normal rule," the Supreme Court cited *The Evergreens v. Nunan*[110] and comment p of § 68 of the original Restatement of Judgments.[111]

---

[105] *Id.* at 300.

[106] *Id.* at 335.

[107] *Id.* at 337.

[108] *Id.* at 337-38.

[109] *Id.* at 338.

[110] 141 F.2d 927 (2ᵈ Cir. 1944).

[111] *Yates*, 354 U.S. at 338.

Comment p ruled out the use of evidentiary facts in the civil collateral-estoppel context: "Evidentiary facts. The rules stated in this Section are applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts."[112]

In *The Evergreens*, Judge Learned Hand addressed, in the civil context, the question of whether a previously litigated fact must be an ultimate issue in the first or second lawsuits in order to be given preclusive effect under the doctrine of collateral estoppel.[113] He observed that there was a conflict in authority regarding whether an issue must be an ultimate fact in the first suit.[114] He was aware of no case, however, that allowed facts decided in the first suit (ultimate or not) to be used as mere "mediate data" in the second.[115] Confronted with a dearth of authority, and being free to decide, the court did "not hesitate to hold" that, even assuming "mediate data" decided in the first suit could be used to establish "ultimate" facts in the second, no fact decided in the first suit—whether "ultimate" or "mediate"—could conclusively establish anything other than an "ultimate" fact in the second suit.[116]

### c. The Fifth Circuit and Other Jurisdictions

As discussed earlier in this opinion, the Fifth Circuit—in the *Wingate* line of cases— departed from the *Ashe* approach and took an expansive view of the collateral-estoppel protection

---

[112] RESTATEMENT OF JUDGMENTS § 68 cmt. p.

[113] *The Evergreens*, 141 F.2d at 928-931.

[114] *Id.* at 928-29.

[115] *Id.* at 930.

[116] *Id.* at 930-31.

in criminal prosecutions. But the Fifth Circuit conducted an about-face in 1994 in *Wright v. Whitley*.[117] In that case, the defendant was acquitted of two weapon-possession charges, and he was subsequently charged with murder.[118] The defendant sought, unsuccessfully, to use the fact of those earlier acquittals to bar certain testimony regarding his possession of a rifle.[119] Rejecting the defendant's claim, the Fifth Circuit decided that *Wingate*'s "broader reading of *Ashe*"—applying collateral estoppel to the relitigation of evidentiary facts—"has not been accepted by the Supreme Court."[120] Instead, the Fifth Circuit found that the Supreme Court's decision in *Dowling* "teaches that the *Ashe* holding only bars relitigation of a previously rejected factual allegation where that fact is an ultimate issue in the subsequent case."[121]

In *Brackett*, the Fifth Circuit retreated somewhat from this expansive interpretation of *Dowling*—characterizing *Dowling* more narrowly as a burden-of-proof case.[122] The Fifth Circuit believed that *Dowling*'s burden-of-proof holding effectively limited the doctrine of collateral estoppel to the prosecution's attempt to relitigate an essential element of an offense because "only ultimate facts must be established beyond a reasonable doubt."[123] The Fifth Circuit found it "difficult to conceive of a case in which collateral estoppel would bar admission or argumentation

---

[117]  11 F.3d 542 (5th Cir. 1994).

[118]  *Id.* at 545.

[119]  *Id.*

[120]  *Id.* at 545.

[121]  *Id.* at 546.

[122]  *Brackett*, 113 F.3d at 1401. For discussion of *Dowling*'s holding on burden of proof, *see* this opinion, *ante*.

[123]  *Brackett*, 113 F.3d at 1401 n.9.

of facts necessarily decided in the first trial, without completely barring the subsequent prosecution," but it stated, "[W]e have no occasion to consider whether *Dowling* has overruled this line of decisions, and we leave that question for another day."[124]

There is a split among the federal circuits and various other jurisdictions on whether collateral estoppel can ever apply to facts that are merely evidentiary in the second prosecution.[125]

### d. The Restatement (Second)

The Restatement (Second) of Judgments has taken a dramatically different position from the

---

[124]  *Id.*

[125]  For authority in favor of extending collateral estoppel to such evidentiary facts, *see United States v. Moffett*, 882 F.2d 885, 889, 889 n.2 (4th Cir. 1989); *United States v. Castillo-Basa*, 483 F.3d 890, 897 n.4 (9th Cir. 2007) (contending that a restriction of collateral estoppel to issues of ultimate fact is "completely without foundation"); *United States v. Carter*, 60 F.3d 1532, 1535 (11th Cir. 1995); *Laughlin v. United States*, 344 F.2d 187, 189-92 (D.C. Cir. 1965) (collateral-estoppel effect accorded the suppression of tape recordings in earlier prosecution); *State v. Aparo*, 223 Conn. 384, 408 n.9, 614 A.2d 401, 413 n.9 (1992) (referring to "well established rule that collateral estoppel may exclude evidence in certain cases"); *Underwood v. State*, 722 N.E.2d 828, (Ind. 2000) (citing *Little v. State*, 501 N.E.2d 412  (Ind. 1986)); *Little*, 501 N.E.2d at 413-14 (relying in part upon *Mock*)); *People v. Acevedo*, 69 N.Y.2d 478, 484-87, 508 N.E.2d 665, 669-71 (Ct. App. 1987); *Commonwealth v. Holder*, 569 Pa. 474, 479-80, 479 ns.3, 4, 805 A.2d 499, 502, 502 ns.3, 4 (2002) (citing RESTATEMENT (SECOND) OF JUDGMENTS §27); *Simon,* 220 Va. at 416-18, 258 S.E.2d at 570-71; *State v. Thomas*, 124 Wis. 2d 101, 122, 369 N.W.2d 145, 155 (1985).

For authority against applying collateral estoppel to evidentiary facts, *see United States v. Bailin*, 977 F.2d 270, 277 n.9 (7th Cir. 1992) (earlier Second Circuit case, "insofar as it held that issue preclusion applies to evidentiary as well as ultimate facts, has been partially overruled by *Dowling*"); *Flittie v. Solem*, 775 F.2d 933, 942 (8th Cir. 1985) (stating the law of the Eighth Circuit as "collateral estoppel does not bar relitigation of facts that are evidentiary in the second prosecution"); *State v. Gusman*, 125 Idaho 805, 809, 874 P.2d 1112, 1116 (1994) ("Collateral estoppel only precludes the relitigation of *ultimate issues* of fact.") (emphasis in original); *State v. Sharkey*, 574 N.W.2d 6, 9 (Iowa 1997) ("[C]ollateral estoppel applies only to ultimate facts, not to evidentiary facts."); *State v. Glenn*, 160 N.H. 480, 492-93, 9 A.3d 161, 171 (2010) ("[C]ollateral estoppel does not forbid the relitigation of an issue as one of evidentiary fact, even if the State has lost on the same issue as one of ultimate fact to be proven beyond a reasonable doubt in a prior trial.") (brackets and internal quotation marks omitted); *Eatherton v. State*, 810 P.2d 93, 99 (Wyo. 1991) (adopting rule as articulated in *Flittie*).

original Restatement regarding the application of collateral estoppel to evidentiary facts. Comment j of § 27 eschews any distinction between "evidentiary" and "ultimate" facts and takes the position that the appropriate question "is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment."[126] In support of this position, the comment makes two arguments: (1) that the "line between ultimate facts and evidentiary facts is often impossible to draw," and (2) that, "great effort may have been expended by both parties" in litigating the issue "and it may well have been regarded as the key issue in dispute."[127]

A number of jurisdictions have adopted comment j in civil cases.[128] Although the doctrine of collateral estoppel was originally developed in civil cases, one question is whether collateral estoppel in the criminal law must match any evolution in the civil law or whether developments in the civil law have gone further than is appropriate for criminal cases. The Restatement (Second) of Judgments is by its terms limited to "the preclusive effects of judgments in civil actions" and so takes no position on whether its principles apply in criminal cases.[129] A perusal of the authorities

---

[126] RESTATEMENT (SECOND) OF JUDGMENTS §27 cmt. j.

[127] *Id.*

[128] *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 771 (1st Cir. 2010) ("[C]ollateral estoppel is no longer limited to ultimate issues: necessary *intermediate* findings can now be used to preclude litigation.") (emphasis in original); *Synanon Church v. United States*, 820 F.2d 421, 426-27 (D.C. Cir. 1987) (rejecting *The Evergreens* view in favor of the Restatement (Second)); *Meier v. Commissioner*, 91 T.C. 273, 283-86 (1988) (same); *Smith v. Roane*, 284 Ark. 568, 570, 683 S.W.2d 935, 936 (1985) (same); *Comes v. Microsoft Corp.*, 709 N.W.2d 114, 121 (Iowa 2006) (adopting comment j); *In Re Zachary G.*, 159 N.H. 146, 151, 982 A.2d 367, 372 (2009) (favorable citation to comment j); *see also Winters v. Lavine*, 574 F.2d 46, 58 n.12 (2d Cir. 1978) (criticizing rule from *The Evergreens* and citing favorably a tentative draft of comment j).

[129] RESTATEMENT (SECOND) OF JUDGMENTS, Ch. 1: Introduction, Scope Note; *see also id.*, § 85, Reporter's Notes, last para. ("The preclusive effect in a subsequent criminal prosecution of a prior civil judgment against the government is outside the scope of this Restatement.").

discussed above reveals that New Hampshire and Iowa have retained the *Ashe* approach in criminal cases despite being receptive in civil cases to the "new" approach embodied in comment j.[130]

The Supreme Court has cited §27 of the Restatement (Second) of Judgments in two recent double-jeopardy cases, but it has not cited to comment j or expressly addressed the issue currently before us.[131] Though it has characterized as "more descriptive," §27's use of the term "issue preclusion" in place of "collateral estoppel,"[132] the Court nevertheless continues to refer to the "ultimate fact" language found in *Ashe*.[133]

In *Standefer v. United States*, the Supreme Court recognized that the doctrine of collateral estoppel may carry limitations in criminal cases that do not exist in civil cases.[134] Standefer was charged as a party to official misconduct.[135] The official in question was also charged but was acquitted on some of the counts.[136] Standefer wished to use that acquittal to establish that he could not have aided the commission of those counts.[137] In declining to permit the nonmutual use of collateral estoppel, the Supreme Court explained that "the Government is often without the kind of

---

[130] *Compare*, this opinion, footnotes 125 and 128.

[131] *See Bies*, 129 S. Ct. at 2152; *Yeager*, 129 S. Ct. at 2367 n.4.

[132] *Yeager*, 129 S. Ct. at 2367 n.4.

[133] *Id.* at 2367; *Bies*, 129 S. Ct. at 2153.

[134] 447 U.S. 10 (1980).

[135] *Id.* at 11.

[136] *Id.* at 13.

[137] *Id.*

'full and fair opportunity to litigate' that is a prerequisite of estoppel."[138]  The Court pointed to

several aspects of criminal law that make this so:

> [T]he prosecution's discovery rights in criminal cases are limited, both by rules of
> court and constitutional privileges; it is prohibited from being granted a directed
> verdict or from obtaining a judgment notwithstanding the verdict no matter how clear
> the evidence in support of guilt . . .; it cannot secure a new trial on the ground that an
> acquittal was plainly contrary to the weight of the evidence . . .; and it cannot secure
> appellate review where a defendant has been acquitted.[139]

The Court also noted rules of evidence that are unique to criminal law that might make evidence

inadmissible against one defendant that is admissible against another, and the Court pointed to the

"important federal interest in the enforcement of the criminal law."[140]  And though the concern about

the admissibility of evidence could possibly be met on a case-by-case basis by conducting a pretrial

hearing to determine whether a trial court's evidentiary ruling had deprived the government of a

chance to present its case the first time around, that process "could prove protracted and

burdensome."[141]

The ability of a party to fully and fairly litigate the claim in question is also a part of the

Restatement (Second) approach.  Under § 28, the Restatement (Second) outlines an exception to the

general rule of issue preclusion, when "[t]he party against whom preclusion is sought could not, as

a matter of law, have obtained review of the judgment in the initial action."[142]  The prosecution

---

[138]  *Id.* at 22.

[139]  *Id.*

[140]  *Id.* at 23-24.

[141]  *Id.* at 24.

[142]  RESTATEMENT (SECOND) OF JUDGMENTS, § 28(1).

cannot obtain review of an acquittal,[143] and so a precondition for applying the Restatement (Second) scheme to criminal cases seems to be absent.[144] It is true that the absence of appellate review is not always "an essential predicate of estoppel"[145] (see *Ashe*, for example), but the collateral-estoppel doctrine is "premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct," and in the absence of appellate review, such confidence is often unwarranted.[146] Thus, the absence of review counsels in favor of retaining the narrower *Ashe* approach to collateral estoppel in criminal cases.

The State can obtain appellate review of a trial court's ruling on a motion to suppress if the ruling is made before trial.[147] But, under *Woods*, the trial court in the present case was not authorized to rule upon the legality of the detention before trial. Even in the more common case in which such authority exists, a trial court is not required to rule on a motion to suppress before trial,[148] and

---

[143] *See Standefer*, *supra*.

[144] *See* RESTATEMENT (SECOND) OF JUDGMENTS, § 85(3) ("A judgment against the prosecuting authority is preclusive against the government only under the conditions stated in §§ 27-29."); *id.*, §85 cmt. g ("If the matter adjudicated was one of affirmative defense and the defendant had the burden of establishing the defense by a preponderance of the evidence, it would be appropriate to treat the issue as conclusive against the government in a subsequent civil action. However, the government usually does not have a right of appellate review of a criminal judgment, so that the exception created in §28(1) would ordinarily deny preclusive effect to the finding even in the case of an affirmative defense. Hence it would be a rare case in which an acquittal could result in preclusion against the government in a subsequent civil action.").

[145] *Standefer*, 447 U.S. at 23.

[146] *Standefer*, 447 U.S. at 23.

[147] TEX. CODE CRIM. PROC. art. 44.01(a)(5).

[148] *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988); *Bell v. State*, 442 S.W.2d 716, 719 (Tex. Crim. App. 1969).

sometimes a trial court may find it useful to carry the motion along with the trial on the merits.[149]

*e. Interests underlying Double Jeopardy and Criminal Cases*

But even when a motion to suppress is granted pretrial, the State has the option to simply dismiss the case, and in doing so, prevent the attachment of jeopardy to the first prosecution.[150] If jeopardy has not attached, then no aspect of double jeopardy, including its collateral-estoppel component, is implicated.[151] This fact suggests that suppression issues are simply not the type of issues that implicate double jeopardy in the first place. When a defendant is placed in jeopardy, he is placed in jeopardy for the elements of the offense, not for mere evidentiary matters. Such a view is consistent with the Supreme Court's rejection of the *Grady v. Corbin*[152] same-conduct standard, and its reaffirmation of the importance of the elements of the offense in the double-jeopardy context.[153]

---

[149] *See Garza v. State*, 126 S.W.3d 79, 84-85 (Tex. Crim. App. 2004) (error preserved by late objection when trial judge indicated that motion to suppress would be carried with trial).

[150] *See Ortiz v. State*, 933 S.W.2d 102, 105-06 (Tex. Crim. App. 1996) (jeopardy attaches in Texas when the jury is sworn in a jury trial, when the defendant pleads to the indictment in a bench trial, or when a plea agreement is accepted in a plea-bargain setting)

[151] *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977) (before double-jeopardy protections are implicated, jeopardy must have attached); *State v. Moreno*, 294 S.W.3d 594, 597 (Tex. Crim. App. 2009) (same); *Reynolds*, 4 S.W.3d at 20 (collateral estoppel not implicated by civil administrative proceeding [a proceeding in which jeopardy would never attach]); *Guajardo v. State*, 109 S.W.2d 456, 462-63 (Tex. Crim. App. 2003) (Meyers, J., concurring) (collateral estoppel, as a component of double jeopardy, does not apply to determinations made in a proceeding that was dismissed before jeopardy attached); *United States v. Dionisio*, 503 F.3d 78, 85 (2ᵈ Cir. 2007) (same).

[152] 495 U.S. 529 (1990).

[153] *See United States v. Dixon*, 509 U.S. 688, 703-09 (1993); *id.* at 704 (adopting J. Scalia's *Grady* dissent); *Grady*, 495 U.S. at 529 (Scalia, J., dissenting) (The language of the Double Jeopardy Clause "protects individuals from being twice put in jeopardy 'for the same offence,' not for the same conduct or actions.").

Perhaps for this reason, the Supreme Court has never abandoned *Ashe*'s "ultimate fact" language. For jeopardy to attach to an issue in the *first* prosecution, the issue must be "ultimate" rather than merely evidentiary. If jeopardy does not attach to a particular issue in the first prosecution, then that issue cannot become the basis for collateral estoppel in a subsequent prosecution. Indeed, the Fifth Circuit's conclusion in *Brackett* that the burden-of-proof holding in *Dowling* would effectively exempt evidentiary facts from the operation of collateral estoppel seems to be based on the idea that the issue on which preclusion is sought would be an ultimate issue in the *first* prosecution, so that the issue in the first prosecution would nearly always be subject to the beyond-a-reasonable-doubt standard of proof, while an evidentiary fact in a second prosecution would nearly always be subject to a lesser standard proof.[154]

In the present case, the legality of the detention was an ultimate issue in the first prosecution, but, as explained above, that status as an ultimate issue does not help appellant because of the lesser burden of proof with respect to suppression hearings. If, on the other hand, he relies upon the county court at law's resolution of the detention issue solely as a suppression issue—so that the burden of proof in the two prosecutions is the same—then we are confronted with an issue that was not an ultimate issue in *either* prosecution. To accord collateral-estoppel protection, under the rubric of double jeopardy, to such an issue would stray far from the theoretical groundings of the Double Jeopardy Clause and the Supreme Court's earlier pronouncements on the issue of collateral

---

[154] *See Brackett*, 113 F.3d at 1401 n.9 ("Because only ultimate facts must be established beyond a reasonable doubt, however, *Dowling* effectively limits the doctrine of collateral estoppel to cases in which the government seeks to relitigate an essential element of the offense.").

estoppel.[155]

In light of our discussion, we reaffirm the bottom-line result in *Murphy* as controlling where a defendant seeks to bar the relitigation of suppression issues on the basis of double jeopardy. That is, the State is not barred by the Double Jeopardy Clause from relitigating a suppression issue that was not an ultimate fact in the first prosecution and was not an ultimate fact in the second prosecution. We overrule appellant's second ground for review.

The judgment of the court of appeals is affirmed.

Delivered: June 29, 2011
Publish

---

[155] Judge Womack's concurrence raises some interesting (and complex) questions regarding both the scope of the collateral estoppel doctrine within the double-jeopardy protection and whether the collateral estoppel doctrine has any vitality outside the double-jeopardy context. Does the double-jeopardy protection—via *Ashe's* "ultimate fact" language—include the application of collateral estoppel to defenses (e.g. self-defense) and punishment-mitigation issues (e.g. sudden passion), and if not, should preclusive effect be given to jury findings on these types of issues on some other basis? *See United States v. Oppenheimer*, 242 U.S. 85 (1916) (pre-*Ashe* case applying collateral estoppel to a statute of limitations defense); *Ex parte Watkins*, 73 S.W.3d 264, 267-72 (Tex. Crim. App. 2002) (applying collateral estoppel to sudden-passion punishment-mitigation issue under the rubric of double jeopardy in the pretrial habeas setting); *Guajardo*, 109 S.W.3d at 468-69 (Tex. Crim. App. 2003) (Hervey, J., concurring) (arguing that collateral estoppel does not exist in criminal cases outside the double-jeopardy context). Should we re-think some of our other precedents (besides *Murphy*) in light of evolving Supreme Court jurisprudence? We need not address those questions here. It is enough here to hold that double-jeopardy protections are not involved when the issues on which the defendant seeks preclusion are not ultimate in nature.