IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 97-30055

---

JEFFREY D. NEAL,

                                        Petitioner-Appellant,

                         versus

BURL CAIN, Acting Warden,

                                        Respondent-Appellee.

---

Appeal from the United States District Court
For the Western District of Louisiana

---

May 8, 1998

Before WISDOM, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

     Petitioner Jeffrey Neal was convicted in two separate trials in Louisiana state court of sexual battery and aggravated kidnaping respectively.  He is currently serving a sentence of life imprisonment at hard labor.  Neal filed a petition for a writ of habeas corpus in federal district court, alleging, among other things, that the principle of collateral estoppel barred his second trial for aggravated kidnaping after he was convicted of sexual battery but acquitted of aggravated rape in his first trial.  The district court denied his petition and we affirm.

I.

On the evening of October 24, 1986, the victim was walking alone in her neighborhood in Bastrop, Louisiana, when she was grabbed from behind by Neal. Neal held a knife to her throat, asked her if "she had ever been cut," and told her not to scream. He dragged her 150 feet to a secluded area behind a vacant house, where the victim told Neal that she would do anything if he would not hurt her. After threatening to kill her if she did not remain quiet, Neal made the victim undress, forced her to engage in oral sex, and then had intercourse with her. The victim complied with Neal's sexual demands because she was afraid that Neal would kill her.

After Neal had intercourse with the victim, the victim asked if she could leave. Neal refused, telling her that he had a gun and would shoot her if she tried to escape. Neal then discussed with the victim the idea of her making money for him by prostituting herself. Neal suggested that he would let the victim go if she would act as a prostitute for him. Hoping to appease Neal and hasten her release, the victim went along with Neal's plan.

The victim and Neal then walked through the neighborhood together until they reached a park, where he once again forced her to engage in oral sex and had intercourse with her. After they left the park, the pair arrived at a bar. Neal sent the victim into the bar and told her to act as a prostitute for him inside. Once inside the bar, the victim told the bar's owner that there was a man outside who was threatening to kill her. The police were

2

called and the victim identified Neal to them. After discovering a knife on his person, the police arrested Neal.

A Louisiana grand jury indicted Neal on charges of aggravated rape, aggravated oral sexual battery, and simple kidnaping. The prosecutor chose to go to trial only on the aggravated rape charge, see La. Rev. Stat. Ann. § 14:42, reserving the others in case something went "wrong" at the rape trial. Neal testified at this trial, claiming that the sexual relations between himself and the victim were consensual. The jury convicted Neal only of the lesser-included offense of sexual battery, see La. Rev. Stat. Ann. § 14:43.1, amended by Acts 1991, No. 654, § 1, and the trial court sentenced him to ten years of imprisonment. Louisiana's Second Circuit Court of Appeal later affirmed this conviction on direct appeal. See State v. Neal, 535 So. 2d 757 (La. Ct. App. 1988).

The State then returned to the grand jury and obtained new indictments for aggravated kidnaping and aggravated oral sexual battery. A trial on the aggravated kidnaping charge ensued, see La. Rev. Stat. Ann. § 14:44, and Neal was convicted. For this offense, the court sentenced Neal to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. The Louisiana appellate courts denied Neal's direct appeal from his second conviction as well. See State v. Neal, 550 So. 2d 740 (La. Ct. App. 1989).

Thereafter, Neal filed a habeas petition in state court. The trial court denied relief to Neal, see State v. Neal, No. 88-11A (La. 4th Dist. Ct. Dec. 15, 1992), a decision that was affirmed by

3

the Court of Appeal, see State v. Neal, No. 25269-KH (La. Ct. App. Apr. 8, 1993). Neal then filed this petition for a writ of habeas corpus in federal district court. A magistrate judge recommended that Neal's petition be denied, and the district court adopted the magistrate judge's report and recommendation. Later, the district court also denied Neal's request for a certificate of appealability, but we granted Neal's request for a certificate of probable cause. See Brown v. Cain, 104 F.3d 744 (5th Cir.), cert. denied, 117 S. Ct. 1489 (1997) (holding that habeas petitions filed before effective date of AEDPA need only obtain certificates of probable cause for appeal). This appeal followed.

## II.

The central thrust of Neal's petition is that the principle of collateral estoppel barred his second trial for aggravated kidnaping. As Neal sees it, the State was collaterally estopped from relying upon the facts of the "rape," which he claims were disproved in the first trial, in establishing the aggravated kidnaping in the second trial.

As the Supreme Court has recognized, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. See Ashe v. Swenson, 397 U.S. 436, 443-44 (1970). Collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." Id. at

4

443. As applied against the government in criminal cases, collateral estoppel may either bar a subsequent prosecution, or it may prevent the relitigation of particular facts necessarily established in the prior proceeding. See United States v. Caucci, 635 F.2d 441, 448 (5th Cir.), cert. denied, 454 U.S. 831 (1981). In determining whether collateral estoppel bars a subsequent prosecution, as Neal contends it does here, we engage in a two-step analysis. See United States v. Levy, 803 F.2d 1390, 1398 (5th Cir. 1986). First, we must discern which facts were "necessarily decided" in the first proceeding. See United States v. Brackett, 113 F.3d 1396, 1398 (5th Cir.), cert. denied, 118 S. Ct. 341 (1997). We then consider whether the facts "necessarily decided" in the first trial constitute essential elements of the offense in the second trial. See id. at 1399.

The first step of the collateral-estoppel analysis requires us to identify the facts necessarily decided in Neal's first trial, in which he was charged with aggravated rape. At the time of his offense, Louisiana's aggravated rape statute provided, in relevant part:

> A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
> (2) When the victim is prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution.
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
> (4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

5

(5)  When two or more offenders participate in the act.
 . . . .

La. Rev. Stat. Ann. § 14:42.  The jury, however, by a general verdict acquitted Neal of the aggravated rape charge and convicted him instead of the lesser-included offense of sexual battery.  See State v. Campbell, 670 So. 2d 1212, 1213 (La. 1996) (acknowledging that conviction only of a lesser-included offense is a functional acquittal of greater offense).  At the time, the sexual battery statute provided, in pertinent part:

> A.  Sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender compels the other person to submit by placing the person in fear of receiving bodily harm, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
>> (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
>> (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
> . . . .

La. Rev. Stat. Ann. § 14:43.1, amended by Acts 1991, No. 654, § 1.

Interpreting the outcome of the first trial is complicated by the somewhat inconsistent verdict of the jury.  At trial, the victim's testimony was that she had been forced by Neal to engage in sexual activity with him.  Neal's defense, on the other hand, was that the sexual activity was consensual.  Thus, depending on whom it believed, the jury's options were either to convict or acquit Neal of rape; no party attempted to establish that some crime less serious than rape might have occurred instead.  That Neal was convicted on the lesser-included offense of sexual battery

6

seems to represent a compromise between those members of the jury favoring conviction and those favoring acquittal.

Nevertheless, our task is to make legal sense of the jury's verdict.  Cf. De La Rosa v. Lynaugh, 817 F.2d 259, 267-68 (5th Cir. 1987) (noting that in considering double-jeopardy challenges premised on a first jury's verdict, that jury must be presumed to have acted in a legally correct manner); Green v. Estelle, 601 F.2d 877, 878-79 (5th Cir. 1979) (holding that, for collateral estoppel purposes, appellate court must take jury "at its word," even if the verdict appears influenced by mercy).  "While we do not test ourselves as three more jurors in the case, we are compelled to determine as best we can what makes the jury's verdict cohere." United States v. Larkin, 605 F.2d 1360, 1369 (5th Cir. 1979), modified on other grounds, 611 F.2d 585 (5th Cir.), cert. denied, 446 U.S. 939 (1980).  "We should make this determination in a realistic, rational, and practical way, keeping in mind all the circumstances."  United States v. Deerman, 837 F.2d 684, 690 (5th Cir.), cert. denied, 488 U.S. 856 (1988).

The most straightforward manner of determining which facts were necessarily decided by Neal's implicit acquittal on aggravated rape charges is to examine the differences between the aggravated rape and sexual battery statutes as they existed at the time of Neal's trial.  The rape statute, for example, requires actual intercourse between the defendant and the victim, whereas a defendant could violate the sexual battery statute simply by

7

touching the victim in an inappropriate manner.[1]  Yet there was no dispute at trial that actual intercourse had occurred, so the jury's verdict could not have depended on this distinction. Likewise, the rape statute's references to youthful victims and multiple assailants also were not implicated in this case.

The only remaining difference between the two statutes on which the jury could have hung its verdict relates to the varying definitions of "force."  A defendant can violate the aggravated rape statute by using force in one of three separate scenarios: "(1) When the victim resist the act to the utmost, but whose resistance is overcome by force. (2) When the victim is prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution. [and] (3) When the victim is prevented from resisting the act because the offenders is armed with a dangerous weapon."  La. Rev. Stat. Ann. § 14:42.  The sexual battery statute, on the other hand, is violated "where the offender compels the other person to submit by placing the person in fear of receiving bodily harm."  La. Rev. Stat. Ann. § 14:43.1.

We need not tarry long with interpreting and distinguishing the force elements of the two statutes,[2] except to note that a

_____

[1]Apparently, it is this distinction in conduct that motivated the Louisiana Legislature to establish sexual battery as a separate crime.  See State v. Schenck, 513 So. 2d 1159, 1162 (La. 1987) (noting that the "legislative scheme . . . envisions sexual battery as encompassing conduct falling short of actual rape but which is sexually intrusive and more egregious than simple battery").

[2]Our research has revealed little judicial commentary in Louisiana analyzing the differing levels of force in the two

rational jury could have premised its verdict on the differing definitions of force in the two provisions. Neal's jury could have read the rape statute to mean that the defendant's use of force must be of an immediate nature, contemporaneous with the sexual act. In other words, the jury might have believed that under the aggravated rape statute, a defendant's use of force must have been directly aimed at overcoming the victim's resistance. The testimony at trial indicated that Neal's threats to the victim and use of a weapon preceded the sexual activity to some degree, however minor. Thus, the jury must have reasoned that Neal's more general threats of violence, none of which were aimed explicitly at securing sexual favors from the victim, came closer to satisfying the force definition of the sexual battery statute. This is not to say that this is the most compelling view of the case. We seek only to assign a rational explanation to the jury's actions. See Larkin, 605 F.2d at 1369.

It is important that the first verdict determined unambiguously that Neal had engaged in forcible sexual relations with the victim. Neal submits that the first jury declared that he had not "raped" the victim, and thus the State was precluded from relitigating the facts of the "rape" in the second trial. While Neal is correct in a tautological sense, by no means did his first jury conclude that he did not have a violent sexual encounter with

statutes. See, e.g., State v. Honeycutt, 438 So. 2d 1303, 1309-10 (La. 1983)(Stoker, J., dissenting) (implying that aggravated rape, simple rape, and sexual battery, the spectrum of sexual crimes in diminishing order of severity, can be sorted by level of resistance of the victim).

9

the victim.  The first jury necessarily decided little if anything against the government in convicting Neal only of sexual battery.

The second step in our collateral estoppel analysis is to ascertain whether the facts decided against the government in the first trial were essential elements of the crime charged in the second trial.  See Brackett, 113 F.3d at 1399.  In his second trial, Neal was convicted of aggravated kidnaping.  Louisiana's aggravated kidnaping statute provides, in relevant part:

> Aggravated kidnaping is the doing of any of the following acts with the intent thereby to force the victim . . . to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
> (1)  The forcible seizing and carrying of any person from one place to another; or
> (2)  The enticing or persuading of any person to go from one place to another; or
> (3)  The imprisoning or forcible secreting of any person.
> . . . .

La. Rev. Stat. Ann. § 14:44.  Most of the elements of aggravated kidnaping are noncontroversial in this case.  The government offered ample evidence that Neal employed force, as testimony was presented that he held the victim at knifepoint.  Moreover, Neal's actions in compelling the victim to accompany him on a trip through Bastrop constituted a "seizing" under the statute.

Neal, however, contends that the State encountered collateral estoppel problems in attempting to establish the "thing of value" element of the offense.  In demonstrating that Neal intended to make the victim relinquish a "thing of value," the State relied on two separate theories.  First, it argued to the jury that Neal required the victim to act as a prostitute on his behalf in order

10

to secure her release.  Had the State's proof stopped there, Neal would not have even a colorable collateral estoppel argument, for there would be no need to relitigate any of the forced sexual encounters to demonstrate that Neal would not release the victim until she served him as a prostitute.  However, the State went further and presented a second theory to the jury: that Neal also would not release the victim until she had sexual relations with him.[3]  See, e.g., State v. Branch, 475 So. 2d 388, 391 (La. Ct. App. 1985) (acknowledging that forced sexual acts can be "things of value" for purposes of the aggravated kidnaping statute).  The State argued that it need not demonstrate that Neal actually succeeding in having sexual relations with the victim, only that he conditioned her release upon her submission to his sexual advances.  Moreover, the trial court instructed the jury that sexual acts can constitute "things of value."

Neal argues that the principle of collateral estoppel prevented the State from demonstrating that the sexual encounters represented a "thing of value," as the first jury concluded that Neal did not "rape" the victim.  Yet the first jury unquestionably determined that Neal had engaged in forcible sexual relations with the victim.  The state therefore did not violate Neal's double

---

[3]There was evidence that the victim's submission to the second sexual encounter was premised on Neal's releasing her.  As the Court of Appeal commented on Neal's direct appeal, "[s]ince the discussion regarding the victim's release took place prior to the rape in the park, the jury could have reasonably concluded that the defendant forced her to engage in sexual relations in order to secure her release."  Neal, 550 So. 2d at 744.  It is less clear that the victim's submission to the first sexual encounter was a condition of her release.

jeopardy rights by relitigating the sexual encounters. Whether those encounters constituted "sexual battery" or "aggravated rape" is immaterial. For the jury to determine that Neal had forced the victim to relinquish sexual favors, the State need only have demonstrated that the victim engaged in sexual relations with Neal against her will. The first jury's verdict did not preclude the State from doing so. Cf. Ashe, 397 U.S. at 444 ("Where a previous judgment of acquittal was based upon a general verdict . . . a court [must] 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'") (quoting Daniel K. Mayers & Fletcher L. Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38-39 (1960)).

In support of his double jeopardy argument, Neal relies on State v. Miller, 571 So. 2d 603 (La. 1990). In Miller, the defendant was tried separately on charges of attempted aggravated rape and simple kidnaping. His first jury acquitted him on the rape charge, but the second convicted him on the kidnaping charge. The Louisiana Supreme Court reversed his kidnaping conviction, finding that the state had improperly relied on evidence of the attempted rape in establishing the "unlawful purpose" element of the kidnaping. See id. at 608. Because Miller had been acquitted of attempted rape, the State could not relitigate the attempted rape as an essential element of simple kidnaping. This situation

12

is different, however, because Neal was not completely exonerated by his first jury. Rather, that jury found that Neal had sexually battered the victim, and the State was thus free to relitigate that particular crime in Neal's second trial.

Therefore, the principle of collateral estoppel did not prevent the State from taking Neal to trial on aggravated kidnaping charges following his implicit acquittal of aggravated rape. What few facts that were decided against the government in Neal's first trial were nonessential to the aggravated kidnaping charge in his second.

## III.

The other issues Neal raises in his habeas petition are similarly without merit. Neal argues that he was subject to vindictive prosecution, contending that the state charged him with aggravated kidnaping in retaliation for his appeal from the sexual battery conviction. Neal points to a plea offer made by the State in the second proceeding, in which the prosecutor offered a plea to lesser charges if, among other things, Neal would drop his appeal from the first conviction. The prosecutor, on the other hand, claimed that he brought the aggravated kidnaping charges against Neal because Neal's acquittal on the rape charge was a "travesty of

justice," and because he felt that Neal still presented a threat to the community.[4]

Neal has made an insufficient showing of prosecutorial vindictiveness. Vindictiveness may be demonstrated where a prosecutor brings additional charges against a defendant to punish the defendant for his exercise of procedural rights. See United States v. Ward, 757 F.2d 616, 619 (5th Cir. 1985). Apart from the plea offer that included a demand to drop the appeal, there is no connection between the second trial and the exercise of any of Neal's procedural rights. As to the plea offer, it is a standard feature of plea agreements for the defendant to drop an appeal or relinquish appellate rights. We will not presume from the mere presence of an appeal waiver in the plea offer that the State went to the expense of bringing new charges against Neal simply to punish him for the exercise of his appellate rights in a separate proceeding. The prosecutor's stated interests in justice and the safety of the community were legitimate reasons to take Neal to trial a second time. See United States v. Aggarwal, 17 F.3d 737, 744 (5th Cir. 1994) (noting that no presumption of prosecutorial

---

[4]According to the prosecutor, he did not seek an aggravated kidnaping charge in the first indictment because of an adverse appellate court ruling which held that sexual acts could not constitute "things of value" for purposes of the aggravated kidnaping statute. Without any citation, the State asserts in its brief that this ruling was overturned before the second grand jury convened. Although we assign no disingenuous motive to the prosecutor's statement, we do find that his reading of Louisiana law is wrong. Long before Neal committed his crime, the Louisiana Supreme Court had made it clear that sexual gratification can constitute something of value under the kidnaping statute. See, e.g., State v. Sonnier, 402 So. 2d 650, 658 (La. 1981), cert. denied, 463 U.S. 1229 (1983).

14

vindictiveness arises if prosector has legitimate reasons for increasing the charges against the defendant in a second proceeding, such as a desire to see justice done); see also United States v. Stokes, 124 F.3d 39, 45 (1st Cir. 1997) ("[P]rosecutors are not required to function as bloodless automatons: they may (indeed, they should) makes judgments about dangerousness, set priorities, and give heightened attention to cases which inspire a sense of outrage."), cert. denied, 118 S. Ct. 1103 (1998). Moreover, it should be noted that the new charges brought against Neal were not more severe than the original charges; both aggravated rape, charged in the first indictment, and aggravated kidnaping, charged in the second, carry mandatory penalties of life imprisonment. See La. Rev. Stat. Ann. § 14:42 & 14:44.

Neal next argues that the trial court erred in permitting the introduction of evidence in the second trial relating to the extraneous offense of rape, after he had been acquitted of that charge. We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. See Porter v. Estelle, 709 F.2d 944, 957 (5th Cir. 1983), cert. denied, 466 U.S. 984 (1984). The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction. See id.

Here, the trial court committed no error, much less any error creating fundamental unfairness. Neal was not acquitted of sexually assaulting the victim, but only of "raping" her. The

evidence of his sexual battery was relevant to the aggravated kidnaping charges, as the victim's consent to at least the second act of intercourse was a "thing of value" that Neal extracted in exchange for her release. To the extent that the victim's submission to the first sexual battery was not motivated by a promise to release her, the state's evidence of the battery formed part of the <u>res gestae</u> of the aggravated kidnaping, as it constituted a portion of the "full story" of the crime. <u>See</u> <u>State v. Haarala</u>, 398 So. 2d 1093, 1097 (La. 1981) (permitting introduction of "other crimes evidence when it is related and intertwined with the charged offense to such extent that the state could not have accurately presented its case without reference to it").

Finally, Neal claims that he received ineffective assistance of counsel. Neal complains that his trial counsel: 1) failed to move to quash the indictment on double jeopardy grounds; 2) failed to raise the issue of prosecutorial vindictiveness; and 3) failed to pursue an appeal under <u>Abney v. United States</u>, 431 U.S. 651 (1977), from the denial of his pretrial double jeopardy motion. To demonstrate ineffective assistance of counsel, however, Neal must prove that his counsel's errors were prejudicial, in that they had an adverse effect on his defense. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Neal's double jeopardy argument and his prosecutorial vindictiveness claim are both without merit. Accordingly, his counsel's purported failure to press both issues was not prejudicial.

16

IV.

We AFFIRM the district court's denial of Neal's petition.