

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0088-10

---

### RICKIE DAWSON YORK, Appellant

### v.

### THE STATE OF TEXAS

---

On Discretionary Review of Case 12-08-00106-CR
of the Twelfth Court of Appeals
Smith County

---

*WOMACK, J., filed a concurring opinion.*

The Court has determined that for double-jeopardy-based collateral estoppel to bar the relitigation of a fact, that fact must be an essential element in both the prior prosecution and the subsequent prosecution.[1] I believe that this rule is a correct statement of the law.

I write separately to offer an alternate explanation for the rule, and to note its limitations.

---

[1] The Court at times uses the terms "ultimate fact" instead of "essential element." However, the Court also argues that for an issue to be an "ultimate fact," jeopardy must attach to it. Therefore, I believe that my statement of the Court's rule is accurate.

## I. Terminology

This area of the law has an intricate terminology, which I have found it helpful to review.

The common law of finality is known as *res judicata*,[2] some parts of which have been codified in statutes and rules, and some parts incorporated in the Federal Constitution. I shall first address the underlying common law.

*Res judicata* "specifies the effect that any adjudication has on all subsequent litigation."[3] *Res judicata* encompasses claim preclusion and issue preclusion.[4] Claim preclusion prohibits a second suit based on the same claim between the same parties.[5] Issue preclusion prohibits a party from relitigating an issue (such as a fact, a question of law, or an application of law to fact) that was previously determined in a suit between the same parties.[6] Issue preclusion comprises two types of estoppel, collateral and direct. Collateral estoppel is issue preclusion in a suit that is based on a different claim than the suit in which the issue was originally decided. Direct estoppel is issue preclusion in a suit based on the same claim as the suit where the issue was originally

---

[2] "A thing adjudicated." BLACK'S LAW DICTIONARY (9th ed. 2009).

[3] ROBERT C. CASAD & KEVIN M. CLERMONT, RES JUDICATA: A HANDBOOK ON ITS THEORY, DOCTRINE, AND PRACTICE 3 (2001).

[4] Confusingly, claim preclusion has traditionally been referred to as "*res judicata*" and issue preclusion has been referred to as "collateral estoppel." *See, e.g., Migra v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n.1 (1984). Both of these terms, however, have different uses, and the modern trend is to use the terms "claim preclusion" and "issue preclusion." *Baker by Thomas v. General Motors*, 522 U.S. 222, 233 n.5 (1998).

[5] *See* 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD N. COOPER, FEDERAL PRACTICE & PROCEDURE § 4402 (2d. 2002) (quoting *Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc.*, 575 F.2d 530, 535-36 (5th Cir. 1978)).

[6] *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

decided. Because claim preclusion will generally prohibit a second suit on the same claim, questions of collateral estoppel are much more common than questions of direct estoppel.[7]

## II. *Res Judicata* and Double Jeopardy

In the criminal law, claim preclusion has been subsumed by the Fifth Amendment prohibition of double jeopardy.[8] While a narrow interpretation of the Fifth Amendment would cover only instances of claim preclusion,[9] the Supreme Court has determined that the Fifth Amendment also incorporates at least one type of issue preclusion. In *Ashe v. Swenson*,[10] the Supreme Court held that where a jury acquitted a defendant of robbing a poker player because it did not believe he was one of the robbers, the Fifth Amendment barred prosecutors from relitigating the issue of identity in another trial for the robbery of another player in the same poker game.[11]

Narrowly interpreted, *Ashe* applies only where the already proven fact from the first prosecution is an essential element of the offense in both the first and second prosecutions. I shall

---

[7] CASAD & CLERMONT*, supra* note 3, at 10 (noting that the term "collateral estoppel" has come to be regarded as a generic term for both types of issue preclusion, but that the term "issue preclusion" is preferable).

[8] *See* U.S. CONST. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"); *see also* CASAD & CLERMONT, *supra* note 3, at 23 (noting that double jeopardy and claim preclusion are slightly different, and then concluding: "Because jeopardy attaches even before judgment, any judgment that would be valid, final, and on the merits for purposes of [claim preclusion] would also be one covered by double jeopardy. The existence of the double jeopardy protection thus has retarded the independent application of the claim preclusion aspects of *res judicata* in repetitive criminal cases.")

[9] *See United States v. Dixon*, 509 U.S. 688, 703-12 (1993) (re-establishing and tracing the history of the rule that the Fifth Amendment bars a subsequent prosecution only when the subsequent prosecution is for an offense that meets the "same-elements" test laid out in *Blockburger v. United States*, 284 U.S. 299 (1932)).

[10] 397 U.S. 436 (1970).

[11] *Id*., at 445-47.

call this "essential-issue preclusion." Since the abolition of federal common law in state cases,[12] the only basis for the Supreme Court to interject a common-law concept like *res judicata* into a state case like *Ashe* would be if that common-law concept were incorporated in the Constitution. The Supreme Court's repeated interpretations of the double jeopardy clause are adamant that double-jeopardy analysis is grounded in the essential elements of an offense.[13] Because only the charged offense places a defendant in jeopardy of life or limb, the relitigation of facts that are not elements of the offense in two prosecutions cannot create double jeopardy.

Although the Fifth Amendment incorporates only essential-issue preclusion, this does not mean that essential-issue preclusion is the only type of *res judicata* in criminal cases. Indeed, *Ashe* stated that the use of "collateral estoppel" in criminal cases was already an "established rule of federal law at least since [the] court's decision … in *United States v. Oppenheimer*."[14] That case was not a case of essential-issue preclusion.

Oppenheimer had been charged with a federal offense, but the indictment was quashed after the trial judge ruled that the statute of limitations for the offense had run.[15] Oppenheimer was later reindicted for the same offense when a ruling in an unrelated case determined that the

---

[12] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).

[13] *See Dixon*, 509 U.S., at 703-712.

[14] *Ashe*, 397 U.S. at 445.

[15] *United States v. Oppenheimer*, 242 U.S. 85, 85 (1916).

statute of limitations was longer than first believed. The Supreme Court held that, while it was not a Fifth Amendment matter,[16] as a matter of *res judicata* the second prosecution was barred.[17]

### III. The *Murphy* Test

The Court's opinion discusses at length the test for issue preclusion that this Court had come to use and which was stated in *Murphy v. State*:

> To determine whether collateral estoppel bars a subsequent prosecution or permits the prosecution but bars religitation of certain specific facts, this court has adopted the two-step analysis employed by the Fifth Circuit. *See Neal v. Cain*, 141 F.3d 207, 210 (5th Cir. 1998); *see also* [*Ex Parte Taylor*, 101 S.W.3d 434, 440 (Tex. Cr. App. 2002)]. This court stated that a court must determine (1) exactly what facts were necessarily decided in the first proceeding, and (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.[18]

On its face, this test purports to apply a two-part analysis to questions of both essential-issue preclusion (where "collateral estoppel bars a subsequent prosecution"[19]) and non-essential-issue preclusion (where "collateral estoppel … permits the prosecution but bars relitigation of certain specific facts"). However, the second part of the two-part analysis requires that the fact-to-be-barred be an element of the second offense. Thus, in analyzing whether issue preclusion

---

[16] *Id.*, at 87 (accepting the prosecution's assertion that the case was one where "the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged").

[17] *Id.*, at 87-88 ("The safeguard provided by the Constitution against the gravest abuses has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice in order, when a man once has been acquitted on the merits, to enable the government to prosecute him a second time"(citation omitted)).

[18] *Murphy v. State*, 239 S.W.3d 791, 795 (Tex. Cr. App. 2007).

[19] Strictly speaking, essential issue preclusion does not bar prosecution, as claim preclusion or ordinary double jeopardy would. Rather, it bars the State from litigating an essential element of the offense. That was the narrow issue *Ashe* addressed. *See Ashe*, 397 U.S. at 446-47. Of course, if a prosecution were brought in such circumstances, the defendant would be entitled to a directed verdict, which means that the prosecution would be *practically* barred. Additionally, there may be due process and ethical problems with bringing a prosecution where the State knew it would be unable to prove an essential element, but those matters are beyond the scope of the Fifth Amendment.

applies, this test eliminates the possibility of non-essential-issue preclusion and leaves only essential-issue preclusion.

How had this Court come to apply a test to questions of non-essential issue preclusion that eliminates the possibility of non-essential-issue preclusion? *Murphy* cited to *Taylor* for the proposition that we use a test from the Fifth Circuit. In *Taylor*, the test was formatted differently:

> To determine whether collateral estoppel bars a subsequent prosecution (or permits prosecution but bars relitigation of certain specific facts) courts employ a two-step analysis. Courts must determine:
> (1) exactly what facts were "necessarily decided" in the first proceeding; and
> (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.[20]

It is not immediately clear to me what difference the parentheses make. Expressed in this format, does the test present non-essential-issue preclusion as an alternative to essential issue preclusion if the prongs of the test are not met? Or does it subject non-essential issue preclusion to the same test as essential-issue preclusion?

*Taylor* itself dealt with a pre-trial habeas applicant who alleged that an element of the offense for which he was being prosecuted had been decided in a previous case in which he had been acquitted.[21] Thus it was a question of essential-issue preclusion governed by *Ashe*. *Taylor*, even while discussing *Ashe*, still spoke broadly of "issue preclusion" and cited to sources that discussed issue preclusion without differentiating

---

[20] *Taylor*, 101 S.W.3d at 440 (citing *Neal v. Cain*, 141 F.3d 207, 210 (5th Cir. 1998)).

[21] *Id*., at 336.

between essential and non-essential issues.[22] The court of appeals decision which *Taylor* affirmed treated the matter as one of essential-issue preclusion.[23]

It is worthwhile to look at the authority for *Taylor*. It cited the Fifth Circuit's opinion in *Neal v. Cain*[24] as the source for its test.[25] In *Neal*, the test is formatted differently and is preceded with an explanation:

> As the Supreme Court has recognized, the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. … As applied against the government in criminal cases, collateral estoppel may either bar a subsequent prosecution, or it may prevent the relitigation of particular facts necessarily established in the prior proceeding. *In determining whether collateral estoppel bars a subsequent prosecution*, as Neal contends it does here, we engage in a two-step analysis. First, we must discern which facts were necessarily decided in the first proceeding. We then consider whether the facts necessarily decided in the first trial constitute essential elements of the offense in the second trial.[26]

In this statement it is clear that the two-part test is meant to discriminate between non-essential- and essential-issue preclusion. While *Neal* broadly discussed "collateral estoppel," the holding applied only to essential-issue preclusion. This makes sense in the context of the case: Because *Ashe* constitutionalized only essential-issue preclusion, the Fifth Circuit would not be deciding a matter of non-essential-issue preclusion in *Neal*,

---

[22] *See, e.g.*, *id.*, at 442.

[23] *Ex parte Taylor*, 2000 WL 19151, at *2, *6 (Tex. App.–Houston [14th Dist.] January 13, 2000) (mem. op.).

[24] 141 F.3d 207 (5th Cir. 2008).

[25] *See Taylor*, 101 S.W.3d, at 440 n.17.

[26] *Neal*, 141 F.3d, at 210 (emphasis added) (citations omitted).

which was a claim for habeas relief from a state conviction.[27] Through the confusion caused by the general term "collateral estoppel," *Taylor* and *Murphy* have suggested that the test for essential issue preclusion also applied to questions of non-essential-issue preclusion. Because this test, by its very terms, will never find something that it purports to test for, *i.e.* non-essential-issue preclusion, we should use a different test.

By my reading, the Court and I are in agreement that the *Murphy* rule is not an accurate statement of the law, and today's opinion replaces the *Murphy* rule.

## IV. The Need for a Texas Rule

While I agree with the Court that the appellant has sought relief based only on double jeopardy protections, I would like to observe that today's holding does not foreclose the possibility of non-essential-issue preclusion based on non-constitutional grounds. The basis for my observation is two-fold. First, the language we have used in many cases has presumed that "collateral estoppel" could apply to facts that were not essential elements.[28] Second, in at least one recent case this Court has explicitly held that "collateral estoppel" applied to bar the State from relitigating a fact that was not an essential element in either prosecution.

---

[27] For its essential issue preclusion test, *Neal* cited to *United States v. Brackett*, 113 F.3d. 1396, 1398 (5th Cir. 1997), a federal prosecution that addressed both essential and non-essential issue preclusion. Because non-essential issue preclusion is not a constitutional matter, the Fifth Circuit's discussions on the topic carry less weight in determining how we should address the issue.

[28] Such language appears in numerous cases cited by the Court: *Murphy*, 239 S.W.3d, at 795 (purporting to apply an issue preclusion test to situations where issue preclusion "permits the prosecution but bars religitation of certain specific facts"); *Taylor*, 101 S.W.3d at 440 (same); *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex. Cr. App. 1981) (quoting Fifth Circuit precedent for the proposition that facts "established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts"); *Neaves v. State*, 767 S.W.2d 784, 786 (Tex. Cr. App. 1989) (applying a rule from a New York state case that differentiated between situations where "res judicata" merely barred the relitigation of "facts or issues" decided in a prior case, and situations where it barred a subsequent prosecution).

The petitioner in *Ex parte Watkins* killed his wife and shot her lover.[29] The State first tried him for the murder of his wife. The jury found him guilty, but during the punishment phase determined that he had acted "under the immediate influence of sudden passion arising from an adequate cause,"[30] and sentenced him to ten years' community supervision.[31] The State then indicted him for the attempted capital murder and attempted murder of his wife's lover. Watkins applied for a pre-trial writ of habeas corpus alleging that (1) ordinary double jeopardy barred the attempted-capital-murder prosecution, because the State had charged him with attempting to intentionally kill more than one person[32] and he already had been punished for the murder of his wife, and (2) "collateral estoppel" barred the State from relitigating the punishment-phase issue of whether he acted with sudden passion.[33] The Second Court of Appeals determined that ordinary double jeopardy was inapplicable, because the elements of attempted capital murder were distinct from the elements of murder charged in the first trial.[34] The Court of Appeals

---

[29] 73 S.W.3d 264, 266 (Tex. Cr. App. 2002).

[30] *See* TEX. PENAL CODE § 19.02(d) (reducing murder to a second-degree felony if the factfinder, during the punishment phase, finds by a preponderance of the evidence that the defendant "caused the death [while] under the immediate influence of sudden passion arising from an adequate cause").

[31] *Watkins*, 73 S.W.3d, at 267.

[32] *See* TEX. PENAL CODE § 19.03(a)(7).

[33] *Ex Parte Watkins*, 52 S.W.3d 858, 860-62 (Tex. App.–Fort Worth 2001), *aff'd* 73 S.W3d. 264 (Tex. Cr. App. 2002).

[34] *Id.*, at 862.

determined, however, that "collateral estoppel" did apply to bar the State from relitigating the punishment issue of sudden passion.[35] We granted review.

After noting the distinctions between double jeopardy and "collateral estoppel,"[36] we held that if a jury determines a punishment-phase special issue in the defendant's favor, "the doctrine of collateral estoppel bars the State from relitigating it in a second trial"[37] and affirmed the Court of Appeals.[38]

The circumstances of *Watkins* illustrate one good reason why this Court should not categorically eliminate the possibility of non-essential-issue preclusion: Our statutes present several situations where an issue decided by a factfinder during the punishment

---

[35] *Id.*, at 861 ("Thus, after the jury in Appellant's first trial determined that he acted in sudden passion, an ultimate issue on punishment, the State may not hale him before a new jury to relitigate that issue again." (international quotation ommitted)).

[36] *Watkins*, 73 S.W.3d, at 267-68.

[37] *Id.*, at 269. I note that the Court in *Watkins* seems to have believed that the case before it was controlled by *Ashe*. *Id.*, at 268. While I believe that *Watkins* was correct in its collateral estoppel holding, as I have laid out above I do not believe it necessarily involved *Ashe* because the case was one of non-essential issue preclusion.

[38] *Id.*, at 275. Under the rule announced today, *Watkins* was wrongly decided if it was indeed a double jeopardy case, as the Court says. The sudden-passion special issue in *Watkins* was a defensive special issue, not an essential element of the offense in either prosecution, thus application of the rule announced by the Court today would deny relief.
    The jury question at issue in *Watkins* did not place the defendant in jeopardy, as that word is understood in Fifth Amendment jurisprudence, at either trial because the question could not have resulted in increased punishment. If answered in the affirmative, Watkins's punishment range would be reduced; if answered in the negative, his punishment range would remain the same as if the question had never been asked.
    It is true, as the Court observes, that *Ashe* referred to collateral estoppel barring relitigation of an "issue of ultimate fact," not an "essential element." However, when *Ashe* used the phrase "issue of ultimate fact" it was describing the common-law rule of issue preclusion as applied by the federal courts. The degree to which *Ashe* constitutionalized that federal common-law rule is, logically, limited by the scope of the Fifth Amendment, which only protects defendants from being twice placed in jeopardy for the same offense. We should read *Ashe* as simply expanding the *application* of the Fifth Amendment to situations where the defendant is twice placed in jeopardy for the same element in two prosecutions. This interpretation more closely ties double-jeopardy-based issue preclusion to the ordinary, claim-preclusion effect of the double jeopardy clause, which only applies when all of the elements of two charged offenses overlap.

phase in one case could be an issue for the factfinder in a subsequent case.[39] Additionally, our exclusionary rule allows the jury to determine during the guilt phase whether it believes beyond a reasonable doubt that evidence was seized legally.[40] If these matters came up in a subsequent prosecution, they would normally not be essential elements of the offense,[41] and thus essential-issue preclusion would not bar their relitigation.

At a minimum, I believe that in these situations common-law issue preclusion should protect the integrity of the original factfinder's determination and bar relitigation in a subsequent prosecution.[42]

## V. The Limits of Double Jeopardy Protections

I disagree with the Court's treatment of *Ashe*'s limitations. By falling back to the "ultimate fact" language used in *Ashe* itself - but not in the Supreme Court's subsequent Fifth Amendment cases - the Court simply invites litigation about the definition of

---

[39] *See id.*, at 269 n.14 (listing statutory special punishment-phase issues that can be given to jurors, including: finding a deadly-weapon was used, TEX. PENAL CODE § 12.35(c)(1); finding that an offense was committed because of bias or prejudice, TEX. PENAL CODE § 12.47(a); finding that murder was committed because of sudden passion, TEX. PENAL CODE 19.03(d); finding that kidnapper voluntarily released a victim in a safe place, TEX. PENAL CODE § 20.04(d); finding that the defendant is the same person as that convicted in a prior case as set out in an enhancement paragraph, TEX. PENAL CODE § 12.42).

[40] TEX. CODE CRIM. PROC. art. 38.23(a).

[41] As I shall discuss shortly, under Supreme Court precedent any punishment-phase issue that could increase the maximum possible sentence, such as a finding that the offense was committed because of bias or prejudice, would be considered an element of the offense, and thus relitigation may be barred by essential-issue preclusion.

[42] *Cf. Rollerson v. State*, 227 S.W.3d 718, 729-32 (Tex. Cr. App. 2007) (where original factfinder found appellant used a deadly weapon in commission of burglary but court of appeals found evidence of deadly-weapon use legally insufficient, the State could relitigate the deadly-weapon question at a second trial because collateral estoppel protects determinations made by the original factfinder, not the appellate court).

"ultimate fact."[43] I believe that my approach, in which double-jeopardy-based issue preclusion follows the contours of the Supreme Court's double jeopardy jurisprudence, avoids these problems. An analysis of two cases, *Oppenheimer* and *Watkins,*[44] which arguably involve "ultimate facts" but certainly do not involve essential elements, shows the limits of where I believe double-jeopardy-based issue preclusion applies.

First, *Oppenheimer* itself stated that the Fifth Amendment's double jeopardy protections did not apply in that case.[45] *Oppenheimer* dealt with a second prosecution after the first prosecution was determined to be barred by the statute of limitations. Oppenheimer was therefore never in jeopardy in the first case; thus his second prosecution was not a second jeopardy.[46] While the "acquittal" in *Oppenheimer* was "on the merits" of the case, the Supreme Court has since made clear that a judgment of acquittal that does not address issues of guilt or innocence does not necessarily bar an appeal or

---

[43] The term "ultimate fact" is not self-defining, nor has its meaning always been consistent with what the Court believes it to mean. *See*, *e.g.*, *Laughlin v. United States*, 344 F.2d 187, 191-92 (D.C. Cir. 1965) (using as definition of "ultimate facts" as "those [facts] which the law makes the occasion for imposing its sanctions," and holding that a trial court's determination that certain evidence was inadmissible was an "ultimate fact" subject to issue preclusion in a second prosecution).

[44] See Sections II and III, *supra*.

[45] *See Oppenheimer*, 242 U.S., at 88 (the Fifth Amendment "has tended to give the impression that when it did not apply in terms, there was no other principle that could. But the 5th Amendment was not intended to do away with what in the civil law is a fundamental principle of justice," namely common-law *res judicata*; the Court then cited to *Jeter v. Hewitt*, 63 U.S. 352, 364 (1859), a civil case where the Court, as authorized by a Louisiana statute, applied common-law claim preclusion).

[46] *Id.*, at 87 (accepting the prosecution's assertion that the case was one where "the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged," which is the sense in which the Fifth Amendment recognizes jeopardy). For this reason, I ~~also~~ disagree with Judge Cochran's citation of *Oppenheimer* as a double jeopardy case.

retrial.[47] The Supreme Court in *Ashe* used *Oppenheimer* to show that the federal courts applied common-law "collateral estoppel" in criminal cases, what it called "the federal rule," but because Oppenheimer was never in jeopardy during his first prosecution, and because the statute of limitations was not an element of the offense, *Oppenheimer* is not a case where double-jeopardy-based issue preclusion should apply.[48]

Second, in *Watkins*, we were ultimately ambivalent regarding whether double jeopardy reached the case at all,[49] but applied issue preclusion nonetheless. In determining whether double jeopardy applied to a fact determined during the punishment phase of a prior proceeding, *Watkins* discussed *Monge v. California*[50] and *Apprendi v. New Jersey*.[51]

---

[47] *United States v. Scott*, 437 U.S. 82, 90-91, 98-99 (1978); *see Kruelski v. Conn. Super. Ct. for the Judicial Dist. of Danbury*, 316 F.3d 103, 109-11 (2nd Cir. 2003) (where trial judge dismissed case, after jeopardy attached, on defendant's motion that prosecution was barred by the statute of limitations, prosecution's appeal and subsequent retrial was not barred by double jeopardy protections)

[48] *Ashe*, 397 U.S., at 443-44. Other cases seem to have uniformly viewed *Oppenheimer* as an example of collateral estoppel. At the risk of heterodoxy, I cannot agree with that analysis.

    The motion that the *Oppenheimer* Court ruled on was a "plea in bar." A plea in bar was not an assertion of issue preclusion, but rather *claim* preclusion. *See* WRIGHT, MILLER & COOPER, *supra* note 5, at § 4402 (quoting Fifth Circuit case describing claim preclusion as being composed of the doctrines of bar and merger, and distinguishing claim preclusion and issue preclusion); CASAD & CLERMONT, *supra* note 3, at 82-85. Bolstering this observation is the fact that the Court referred to "*res judicata*," which, while also an overarching term for the law of finality, has traditionally been used to refer specifically to claim preclusion. Additionally, *Oppenheimer* discussed the "judgment" of the first court, not its findings, and noted that "[a] plea to the statute of limitations is a plea to the merits"; this is more in line with claim preclusion analysis than issue preclusion analysis. Finally, I note that *Oppenheimer* was a second prosecution based on the exact same claim as a prior prosecution, yet Oppenheimer was never in jeopardy during the first prosecution. Upon close reading, it appears to me that *Oppenheimer* was a case neither of double jeopardy nor issue preclusion, but rather common-law claim preclusion.

[49] *See Watkins*, 73 S.W.3d, at 274 ("this type of double jeopardy *or* collateral estoppel claim" (emphasis added).

[50] 524 U.S. 721 (1998)

[51] 530 U.S. 466 (2000).

In *Monge*, the Supreme Court held that double jeopardy did not apply to noncapital sentencing proceedings.[52] During the sentencing phase of Monge's state trial, the prosecutor sought to enhance Monge's sentence on the basis that Monge had previously been convicted of a violent crime.[53] The prosecutor presented evidence of a prior conviction and asserted that Monge had personally committed a violent act during the offense, but the evidence of the conviction did not contain details of the offense. The trial court found the allegation true and enhanced Monge's sentence accordingly. A state court of appeals overturned the enhancement for lack of evidence and ruled that double jeopardy barred the state from relitigating the issue on remand.[54] The Supreme Court held that because punishment-phase punishment enhancers, as a general rule, did not constitute elements of the offense, the punishment phase question did not place Monge in jeopardy and thus relitigating it would not constitute double jeopardy.[55]

*Apprendi* involved a due process challenge to a New Jersey law that elevated the sentencing range if the trial judge found "by a preponderance of the evidence" that the offense was a hate crime.[56] The Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[57] The

[52] *Monge*, 524 U.S., at 724.

[53] *Id.*, at 725.

[54] *Id.*, at 726.

[55] *Id.*, at 728-29.

[56] *Apprendi*, 530 U.S., at 468-69.

[57] *Id.*, at 490.

Court arrived at this holding by determining that when a punishment-phase question increases the maximum possible sentence, that question is not a mere "sentencing factor," but is actually an element of an aggravated offense.[58]

We decided *Watkins* less than two years after *Apprendi*, when the continued validity of *Monge* was in question.[59] Nine years later, though, *Monge*'s core holding remains good law; as a general rule, questions decided during the punishment phase do not place the defendant in jeopardy. Combining *Monge* and *Apprendi*, the scope of double jeopardy protections during the punishment phase becomes clear: When a punishment-phase issue increases the maximum possible punishment, that question is an element of the offense and its relitigation may be barred by double jeopardy,[60] but double jeopardy has no application to the relitigation of punishment issues that do not increase the maximum possible sentence.[61]

---

[58] *Id*., at 494-95.

[59] *See, e.g., Watkins*, 73 S.W.3d, at 271 (*Apprendi* had "significantly curtailed" *Monge*; in *Apprendi*, "[t]he Court distanced itself from *Monge* …").

[60] *See United States v. Blanton*, 476 F.3d 767, 772-73 (9th Cir. 2007) (*Apprendi* modified *Monge* such that double jeopardy barred the prosecution from appealing a trial court's finding that the prosecution had failed to prove a punishment enhancer beyond a reasonable doubt; since enhancer was an element of the offense, trial court's finding, even if based on erroneous legal interpretation, was an acquittal). *But see Rollerson v. State*, 227 S.W.3d 718, 730-32 (Tex. Cr. App. 2007) (where appellant "concede[d] that relitigation of the deadly-weapon issue is not barred by double jeopardy," double jeopardy did not bar the State from relitigating a punishment enhancer that increased the maximum possible sentence on remand after appellate court determined there was insufficient evidence for trial court to have found punishment enhancer true; neither opinion nor briefs made mention of *Apprendi*).

[61] *See United States v. Rosales*, 516 F.3d 749, 757-58 (9th Cir. 2008), *cert. denied*, 553 U.S. 1095 (double jeopardy did not bar prosecutor from appealing trial court's refusal to apply a sentencing enhancement that would have increased the *minimum* sentence imposed).

*Watkins* dealt with a punishment-phase question that could not have increased the defendant's maximum possible punishment. Simply put, it did not place Watkins in jeopardy of anything. Thus federal double jeopardy protections were inapplicable.

Because *Ashe*'s constitutional issue preclusion derives from the Fifth Amendment's prohibition on double jeopardy,[62] the first step to applying it accurately is to analyze which situations implicate the Fifth Amendment at all. By not clearly noting the limits of *Ashe* in its opinion today, the Court may keep us from analyzing essential- and non-essential-issue preclusion claims under the correct law in future cases.

Filed: June 29, 2011

Publish

---

[62] The Supreme Court has referred to *Ashe*-derived collateral estoppel as "[t]he collateral-estoppel effect attributed to the Double Jeopardy Clause." *Dixon*, 509 U.S., at 705. I believe this is an accurate description. Where repeated prosecutions for the same offense elements are at issue, application of the double jeopardy clause will result in issue preclusion. In claims to which the double jeopardy clause does not apply, it will have no effect of any sort. Therefore, any issue preclusion in those cases will be an effect from applying a different doctrine.